45 Cal.2d 142 (1955)
DIXIE GILMORE, an Incompetent Person, etc., Appellant,
v.
DON GILMORE, Respondent.
S. F. No. 18996. 
Supreme Court of California. In Bank. 
Sept. 23, 1955.
 James Martin MacInnis and Nicholas Alaga for Appellant.
 Michael L. Haun, Myers & Meehan and Wallace S. Myers for Respondent. *145
 TRAYNOR, J.
 Plaintiff and defendant were married in 1946 and lived together for approximately six years before this action for divorce was filed in 1952. There were no children of the marriage. In her amended and supplemental complaint plaintiff alleged that defendant was guilty of extreme cruelty, desertion, and adultery. Defendant answered and cross-complained alleging extreme cruelty. The trial court awarded defendant an interlocutory decree of divorce based on findings of extreme cruelty. It also found that defendant had not been guilty of cruelty or desertion, that there was no community property, that specified real and personal property belonged to the parties as joint tenants, and that the remainder of the property claimed to be community was the separate property of defendant or a corporation owned by him. With respect to plaintiff's allegations of defendant's adultery, the court found that the allegations thereof were untrue, "save and except that it is true that during the period between the first day of June, 1952 and the 20th day of June, 1952, the defendant herein indulged in at least six acts of sexual intercourse with women not his wife, in the City and County of San Francisco, State of California; that none of said acts of sexual intercourse constituted extreme cruelty toward plaintiff; that none of said acts of sexual intercourse caused plaintiff herein any mental pain or suffering, and each and all of said acts were committed subsequent to the filing of the ... action." Plaintiff appeals.
 Plaintiff contends that defendant's own testimony establishes that her conduct could not have constituted extreme cruelty toward him. She bases this contention on the fact that defendant was not disturbed by alleged sexual irregularities involving himself, plaintiff, and another woman, and on his testimony with respect to his attitude toward drinking that "Well, when you are tight, I don't think you have any moral responsibility." There is substantial evidence, however, to support the finding of the trial court that "for the period of more than four years last past next immediately preceding the commencement of the above-entitled action, plaintiff has wilfully and wrongfully treated defendant in a cruel and inhuman manner, and in utter disregard and in violation of her marital duties and obligations toward defendant, and has caused defendant great and grievous mental pain and suffering without cause or provocation therefor; that on numerous occasions in the presence of defendant and other persons, plaintiff has wrongfully called defendant vile and opprobrious *146 names, causing defendant shame and humiliation thereby; that for more than four years last past the plaintiff has wilfully and without good cause failed to exhibit any love or affection toward defendant, that during the period of the last four years the said plaintiff has drunk intoxicating liquor to excess; and on numerous occasions, while under the influence of liquor, has quarreled and nagged at defendant and called him vile names, in the presence of other persons, without justification or cause, that for more than three years last past the plaintiff has wilfully, wrongfully and without good cause refused the defendant reasonable, or any, matrimonial sexual intercourse; [and] that said plaintiff has, on numerous occasions during the marriage, without cause, wrongfully and violently struck said defendant, causing him shame, humiliation, embarrassment and grievous and great mental pain and suffering."
 [1] We do not believe that defendant's admitted indifference to accepted standards of normal sexual behavior and his opinion that intoxicated persons have no moral responsibility were sufficient as a matter of law to compel the trial court to conclude that plaintiff's continuous course of misconduct did not constitute extreme cruelty toward him. Thus, that defendant might in the privacy of his own home engage in or observe abnormal sexual activities without moral qualms, [fn. *] or consider intoxication a release from moral responsibility, does not necessarily establish that he was insensitive to public humiliation, physical attacks, and the denial of marital rights. [2] Moreover, the evidence and finding that defendant was not guilty of cruelty toward plaintiff refute plaintiff's contention that he was so depraved as to be incapable of suffering from his wife's conduct. On the whole defendant was kind and considerate of plaintiff. Although on two occasions he slapped her and on others called her names, these incidents were trivial in comparison to similar conduct of plaintiff's and were probably provoked by her. For many years defendant was patient with plaintiff's excessive drinking, *147 and he came home from his business early in the afternoons and stayed with her almost every evening because she did not like to be left alone. He bought her many expensive gifts, took her on extended trips, and purchased two expensive homes in an effort to save the marriage.
 [3] Plaintiff contends, however, that the evidence demonstrates that defendant condoned all of her alleged offenses except those that occurred in the last several months that the parties lived together. There is no merit in this contention. Condonation was not pleaded by plaintiff as a defense and the evidence was not such as to compel a finding that it had been established. (See Hamburger v. Hamburger, 60 Cal.App.2d 530, 536-537 [141 P.2d 453].) Section 118 of the Civil Code provides that "Where the cause of divorce consists of a course of offensive conduct, or arises, in cases of cruelty, from excessive acts of ill-treatment which may, aggregately, constitute the offense, cohabitation, or passive endurance, or conjugal kindness, shall not be evidence of condonation of any of the acts constituting such cause, unless accompanied by an express agreement to condone." There is no evidence of an express agreement to condone, and even had condonation been established with respect to plaintiff's earlier misconduct it would have been revoked by her subsequent similar misconduct that was admittedly not condoned. (Civ. Code, 121.)
 Plaintiff contends that even on the basis of the facts found by the trial court a divorce should have been granted to both of the parties so that alimony could be awarded to her. (See Mueller v. Mueller, 44 Cal.2d 527 [282 P.2d 869].) Since the trial court found on substantial evidence that defendant was not guilty of cruelty or desertion, it could only have awarded plaintiff a divorce on the ground of defendant's adultery committed after the action was commenced and pleaded for the first time in plaintiff's supplemental complaint. Defendant contends that adultery committed after the filing of the action is not a ground for divorce, and that, in any event, relief could not be predicated on a supplemental complaint once it had been determined that plaintiff had no cause of action under the allegations of her original complaint. (See Imperial Land Co. v. Imperial Irr. Dist., 173 Cal. 668, 673 [161 P. 116, 119].) Plaintiff contends, on the other hand, that defendant's adultery may properly be relied upon by her regardless of when it occurred or how it was pleaded and that the trial court erroneously accepted defendant's view that his adultery could not be considered. *148
 Since we have concluded that the trial court fully considered and disposed of the issue of defendant's adultery and did not abuse its discretion by denying plaintiff a divorce, it is unnecessary to decide whether the judgment could also be sustained on the grounds urged by defendant above.
 The supplemental complaint was permitted to be filed over defendant's objection, his motion to strike the evidence supporting its allegations was denied, and the trial court expressly found that the allegations of some 10 to 14 acts of adultery were untrue except that "it is true that ... defendant herein indulged in at least six acts of sexual intercourse with women not his wife" while he was married to defendant. It thus appears that the trial court considered the allegations and evidence of adultery and made a finding that defendant was guilty thereof.
 [4] The applicable rule in this situation was recently restated in Mueller v. Mueller, 44 Cal.2d 527, 530 [282 P.2d 869]. "When each of the parties has given the other grounds for divorce, the court may grant a divorce to both, and it 'is clothed with a broad discretion to advance the requirements of justice in each particular case.' [5, 6] The comparative guilt of the parties 'may have an important bearing upon whether or not either one or both should be granted relief,' and when 'a divorce is granted to both, alimony may be awarded to either, for the basis of liability for alimony is the granting of a divorce against the person required to pay it. (See Civ. Code, 139.)' (De Burgh v. De Burgh, supra, 39 Cal.2d 858, 872-874. ...)" [7] It was also pointed out that the comparative guilt of the parties "is only one factor in determining whether alimony should be awarded and that the needs of the life and the ability of the husband to provide for her are also important," and that in "any particular case adultery may or may not constitute greater fault than that of the other party." (44 Cal.2d at 530, 532.) In that case the court affirmed an award of alimony to a wife found guilty of adultery on the ground that no abuse of discretion was shown.
 [8] In the present case, on the other hand, the trial court concluded that plaintiff was not entitled to a divorce or alimony. In doing so it was necessary for it to weigh the conflicting charges of sexual abnormality, none of which were established as grounds for relief, plaintiff's continuous course of cruel conduct toward defendant, defendant's lack of cruelty toward plaintiff, defendant's adultery, plaintiff's need for support, and defendant's ability to provide it. Although *149 in its oral opinion the trial court expressed the view that the parties were in pari delicto, particularly with regard to sexual irregularities, the findings, which are controlling, and the judgment based thereon reflect the ultimate determination that plaintiff's cruelty justified the denial of relief to her. Although this determination may seem harsh, it should be noted that had defendant not committed adultery after the marriage had failed and the parties separated, on the basis of its findings, the trial court could have reached no other conclusion. In other words, before plaintiff finally left defendant and instituted this action she had forfeited her right to alimony. In the light of plaintiff's indifference to her husband, her continuous course of cruel conduct toward him, and the evidence of her own disregard of accepted standards of sexual behavior, we cannot say that the trial court abused its discretion in denying her relief or hold as a matter of law that defendant's adultery occurring after the failure of the marriage compelled the reinstatement of plaintiff's right to alimony.
 Plaintiff contends that the trial court erred in finding that there was no community property. She bases this contention on the fact that during the marriage defendant's net worth representing his interests in three incorporated automobile dealerships increased from $182,010.46 to $786,045.52. During this period defendant received salaries from his dealerships ranging from a total of $22,250 in 1946 to a total of $66,799.92 in 1952. The trial court found that the salaries paid defendant by the corporations for his services "rendered to and on behalf of said corporations during the married life of the parties hereto, were and are sufficient to fully compensate said defendant and the community for all of the services rendered to and on behalf of said corporations by defendant during said period of marriage, all of which said salaries have been used and expended for community purposes during said marriage." [9] In Huber v. Huber, 27 Cal.2d 784, 792 [167 P.2d 708], the court stated that "In regard to earnings, the rule is that where the husband is operating a business which is his separate property, income from such business is allocated to community or separate property in accordance with the extent to which it is allocable to the husband's efforts or his capital investment." [10] It has frequently been held that a proper method of making such allocation is to deduct from the total earnings of the business the value of the husband's services to it. The remainder, if any, represents *150 the earnings attributable to the separate property invested in the business. (Harrold v. Harrold, 43 Cal.2d 77, 79-81 [271 P.2d 489]; Huber v. Huber, supra, 27 Cal.2d 784, 792; Logan v. Forster, 114 Cal.App.2d 587, 599-601 [250 P.2d 730]; Cozzi v. Cozzi, 81 Cal.App.2d 229, 232-233 [183 P.2d 739]; Seligman v. Seligman, 85 Cal.App. 683, 687 [259 P. 984].) This method was followed by the trial court in this case, and the evidence sustains its findings. Defendant's corporations were staffed by well trained personnel who were capable of carrying on the businesses unassisted. Defendant worked relatively short hours and took many extended vacations. There was expert testimony that the salaries he received, which were found to constitute community income, were more than ample compensation for the services he rendered. Moreover, during the period involved there was a tremendous increase in automobile business that was accompanied by an increase in the value of dealer franchises.
 [11] Plaintiff contends, however, that the proper method for determining what part of the increase in value of the businesses was community property is to subtract from the total increase a reasonable return on the value at the time of the marriage and treat the remainder as community property. She relies on Pereira v. Pereira, 156 Cal. 1, 7 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A.N.S. 880], in which the court stated: "In the absence of circumstances showing a different result, it is to be presumed that some of the profits were justly due to the capital invested. There is nothing to show that all of it was due to defendant's efforts alone. The probable contribution of the capital to the income should have been determined from the circumstances of the case, and as the business was profitable it would amount at least to the usual interest on a long investment well secured." If this method were followed in the present case it would be necessary to allocate to the community a large part of the increase in defendant's net worth during the marriage. The rule of the Pereira case is not, however, in conflict with the rule of the cases cited above and followed by the trial court in this case. It is to be applied only "In the absence of circumstances showing a different result," and the court clearly recognized that if the husband could prove that a larger return on his capital had in fact been realized the allocation should be made differently. (156 Cal. at 11-12.) In the present case defendant introduced substantial evidence that the salaries he received were a proper measure of the community interest in the earnings of the businesses, and the trial court's *151 finding based thereon cannot be disturbed on appeal. (Harrold v. Harrold, supra, 43 Cal.2d 77, 80-81; Gudelj v. Gudelj, 41 Cal.2d 202, 211 [259 P.2d 656].)
 [12] Plaintiff contends that the court deprived her of any real interest in the property found to be held in joint tenancy by failing to require defendant to protect the property against foreclosure and sale for nonpayment of the encumbrances thereon. She contends that such protection could have been afforded had it been found that the property was community, and that in any event, some provision should have been made to protect her interest. The evidence, however, supports the trial court's finding that the property was held in joint tenancy, and in the absence of an award of alimony the trial court had no authority to assign defendant's separate property to plaintiff by requiring him to use it to protect plaintiff's property interests. (Fox v. Fox, 18 Cal.2d 645, 646 [117 P.2d 325]; see Huber v. Huber, supra, 27 Cal.2d 784, 793, and cases cited; Citizens Nat. Trust & Sav. Bank v. Hawkins, 87 Cal.App.2d 535, 542 [197 P.2d 385].)
 [13] Approximately eight months after the termination of the trial plaintiff was adjudicated an incompetent, and her father was appointed her guardian. She now contends that her "now-recognized lack of mental competency pervaded her entire participation in the trial," and that therefore the judgment should be reversed. Plaintiff was represented by able counsel and was observed at the trial, which lasted approximately one month, by the court and counsel. Moreover, she was examined by a psychiatrist whose testimony she offered with respect to the effect of defendant's alleged cruelty on her, and his testimony contains no suggestion that she was mentally incapable of participating in the trial. In the light of the foregoing considerations it is clear that the record fails to establish that her present incompetency existed at the time of the trial and prevented her from fairly presenting her case.
 Finally, plaintiff contends that the trial court committed prejudicial error in admitting and excluding evidence. We have considered her contentions with respect to the questioned rulings and have concluded that even if they were erroneous no prejudicial error has been shown.
 The judgment is affirmed.
 Gibson, C.J., Carter, J., and Schauer, J., concurred.
 Shenk, J., Edmonds, J., and Spence, J., concurred in the judgment.
NOTES
[fn. *] *. The issue of abnormal sexual behavior was introduced into the case by plaintiff's testimony that the marriage failed owing to defendant's constant reiteration of "revolting sexual suggestions" to her. She denied that she had ever engaged in any abnormal sex practices. To refute this testimony defendant testified that plaintiff had been a willing participant in abnormal sex acts with another woman and that he had been a "glorified observer." Defendant's testimony was corroborated by that of the other woman. Although the trial court made no finding with respect to this issue, it stated in its oral opinion that it thought the parties were in pari delicto with respect to it.