[Civ. No. 5872. Fourth Dist. June 29, 1959.]

GERD HENIE, Respondent, v. LEIF W. HENIE, Appellant.

N. E. Youngblood for Appellant.

Holt, Macomber & Graham, Raymond F. Feist, Glenn R. Feist and Robert G. Beverly for Respondent.

GRIFFIN, P. J.—On May 17, 1956, plaintiff-respondent Gerd Henie brought this action against her husband Leif W. Henie, for separate maintenance, alleging extreme cruelty and seeking alimony, support and custody of their three minor children, Wilhelm, aged 12; Robert, aged 8; and Tom, aged 6 years, and disposition of the community property. Certain described property, located in California, was listed. The parties were married in Oslo, Norway, June 3, 1938, and separated April 8, 1956. An order was made for temporary allowance, attorney's fees, etc., and a receiver of the assets was appointed.

Defendant answered, admitted therein the parties owned certain real and personal property, filed a cross-complaint alleging the accumulation of certain community property, most of which was then under the control of the receiver, and also seeking a divorce on the ground of extreme cruelty, joint custody of the children, and division of the community property in an equitable manner. A pretrial order on the issues thus framed was entered on February 28, 1957. On June 7, 1957, plaintiff, by order of court, was permitted to file a supplemental amendment to the complaint alleging two acts of adultery by defendant husband on or about May 24, 1957. By answer thereto, defendant denied such allegations.

The matter proceeded to trial upon the issues presented. On the third day it was agreed between the parties that plaintiff

wife amend her complaint and ask for a divorce on the sole ground of extreme cruelty and defendant husband would strike his cross-complaint and plaintiff proceed, without contest, on her action for divorce, and the parties would proceed on the issues of alimony, child support and custody, and property disposition.

There was some form of stipulation at the time that the matter proceeded to trial upon the issues thus presented and that "the disposition of this matter in the manner indicated shall be without prejudice to the defendant in connection with the setting of any alimony for the plaintiff, the support of the children, or the determination of the status or nature of the property or its disposition . . ."; that "the mere fact that we have made this stipulation shall not militate against this defendant for failure to put on any defense that he might have." It was so ordered. After the close of trial, but before final findings were signed plaintiff filed an amended complaint in which she set forth a more detailed description of the community property, including a certain trust fund, not theretofore listed as community property, which was opened by defendant as "donor" in Chicago, on July 3, 1940, in the sum of $20,000, and which, on the date of trial had increased to the sum of $80,413. It is the court's finding in respect to this item being community property which presents the major argument on this appeal. Some complaint is made that this amendment was not sought in conformity "with the proof adduced at the trial." We see little merit to this contention. The whole case was tried upon the theory that the nature, extent and value of the parties' holdings were in issue. No objections were made as to the admission of evidence pertaining to the trust fund. An order to show cause was issued and served on defendant as to why the complaint should not be thus amended. By order of court it was granted. The record further shows counsel for defendant, in effect, stipulated it could be filed, as amended.

The evidence pertaining to the property rights of the parties consumes over 700 pages of transcript, numerous depositions of the parties, and testimony of witnesses, as well as bookkeeping accounts of defendant's transactions in business. Generally speaking, it appears therefrom that defendant's father owned some fur business in Oslo which defendant later attempted to operate without too much success. He left his wife in Oslo and came to New York in an endeavor to negotiate for some importation business with the United States. After three

or four months he returned to Oslo. In 1939, he again came to the United States and "when the war broke out" in 1940 he sent for his wife to join him. She came in February, 1940, and shortly afterward (in March) they came to California to reside. Soon thereafter they took a trip with defendant's sister Sonja (world famous ice-skating star) and her mother, and then returned to California and lived in various houses rented by Sonja. Plaintiff and her husband would reside in California four or five months and then would go on tours with Sonja from the time of plaintiff's arrival in the United States until 1944. Defendant worked for his sister, traveling on her tours and handling a souvenir business or other matters in connection with her shows. From income tax returns filed by defendant it might well appear that from 1943 to 1949, defendant received in excess of $40,000 each year. There was no evidence that the parties maintained a residence in any other part of the United States, and never in Chicago, Illinois. Their children were born in Los Angeles and schooled there. In 1955, they moved to Oceanside, in San Diego County, and lived there permanently. They invested in extensive acreage there and later subdivided it. During their 17 years of married life they accumulated a wealth of approximately three quarters of a million dollars. From the findings, that property generally consisted of (1) A promissory note for $414,016 payable to these parties secured by a deed of trust; (2) Another one for $80,000 similarly secured; (3) Cash in the sum of $21,000; (4) Lots 60, 38 and 45 in Henie Hills Subdivision in Oceanside; (5) Four additional notes and deeds of trust approximating $7,000; (6) Interest in Henie Hills Country Club and shares approximating $50,000; (7) Residence of the parties plus 28 acres in Oceanside; (8) Personal property, including life insurance policies; and a *trust fund in Chicago valued at $80,413.*

Defendant does not question the finding of the trial court that the property in California was community property but expressly contends the evidence is insufficient to show the Chicago Trust fund was community property. In a written opinion signed August 2, 1957, the trial judge summed up the evidence pertaining to the acquisition of the several properties and held all of them to be community property of the parties. However, in apportioning such property it, in general, by findings and judgment, gave the home property and personal property, with some exceptions, to plaintiff for the benefit of a

home for the wife and three boys. It allowed the trust property in Chicago, valued at $80,000 to remain intact and to be held by defendant as his own. As an offset thereto it assigned to plaintiff the promissory note in the principal amount of $80,000 (#2 above) as her separate property, and generally provided for a division of the remaining community property between them after payment of community debts. A divorce was granted to plaintiff. In addition, an order for payment by defendant of $100 per month for each child was entered and their custody was given to plaintiff with visitation rights to defendant. The court provided therein that there was no immediate alimony order required as to plaintiff but specially reserved jurisdiction to award support money to her upon proper application and showing in the future.

As pointed out by the trial judge, the evidence as to the character of the property is "somewhat unsatisfactory." He said:

"The real controversy between the parties is with reference to property. Plaintiff and defendant were married in Norway in 1938, and shortly thereafter moved to the United States. The evidence is satisfactory that the parties have been domiciled in California since shortly after arriving here. The sister and mother of defendant were residents of Los Angeles County and plaintiff and defendant lived with them in houses owned by them most of the time. For several years defendant spent much of his time on tours in connection with the theatrical performances of his sister, but it is plain that the only domicile that these parties had was in California.

"It follows, therefore, that the property acquired during the period of the marriage is presumed to be the community property of the parties and the burden rests upon the party claiming otherwise to produce satisfactory evidence to overcome the presumption. . . . It is undisputed that plaintiff wife left all matters of business to her husband and that she had very little knowledge of his property or his business affairs. She is unable to give to the court much assistance in determining the character of the property.

"Shortly after the commencement of the suit the deposition of the defendant was taken, at which time inquiry was made as to the various properties owned by him in the State of California. At that time he stated unequivocally that these properties were acquired with funds which he earned during the period of his marriage. He conceded that the wife, according to the laws of California, had, therefore, an interest in the

property. In short, his entire testimony at that time was equivalent to his admission that the property which stood in his name was community property. At some time thereafter defendant changed his testimony and changed some of the answers to his deposition. At the trial he seeks to contend that everything he owns is separate property. Although he originally testified that he brought from Norway but a very small amount of money which had been long since spent and dissipated, at the trial he sought to make it appear that he had brought to this country and invested large sums of money and that these investments had been paying him large dividends ever since. When it came to details, however, of how much money and from what source and what was done with it, he had no recollection whatever. He failed to produce much evidence that was obviously available to him. His testimony was greatly weakened and impeached by his own contradictions and by his failure to produce evidence. The court is therefore forced to the conclusion that he has failed to meet the burden and has failed to establish his contention that the properties in question are separate property. In this connection there is involved the matter of a trust in Chicago. What purports to be a partial copy of the trust agreement appears in evidence as defendant's Exhibit B. It purports to have been made on the 3rd day of July, 1940. The only evidence as to the source of the money which went into this trust is the one statement of defendant that his sister, Sonja Henie, 'gave' him the money which went into this trust. There is no evidence as to what assets did go into the trust and there is no evidence as to whether, since its inception, additional assets have been deposited therein. Some of the provisions of the trust agreement are consistent with the thought that this trust was established as the result of a gift from the sister. On the other hand, had the trust been set up by the sister for the benefit of the brother the transaction would have taken, obviously, a somewhat different form. There is no evidence as to the circumstances of the alleged gift and the court is left to speculate as to whether, by using the word 'gave,' the witness intended to mean that the property or funds came from the sister with or without consideration. The evidence is plain that for a good many years defendant was receiving large sums as compensation for services rendered to the sister and which he treated and referred to as earnings. The details of this transaction, the amounts or property originally de-

posited and the manner of handling the affair subsequently were all within the knowledge of the defendant and unknown to the plaintiff and he has not seen fit to produce that evidence. The court is compelled, therefore, to find that with regard to this property as well, defendant has failed to meet the burden of proof that the funds so deposited were his separate property. In this connection it is to be noted that this trust was set up without the knowledge of the wife and without her consent. The agreement takes the form of a transaction purporting to place whatever property went into the trust beyond the reach of the wife.

"In connection with the California property there have been introduced in evidence to date, deeds signed by the wife, in which she purported to quitclaim to her husband any interest she might have in the California property. She testified she has no recollection of the transactions; that she signed instruments as a matter of course which were presented to her and that the purpose of the execution of these deeds was never discussed. That testimony is not disputed by the defendant, who admits that the deeds were signed as a matter of course and without discussion. In fact, defendant disclaims all knowledge or recollection of the reason why the deeds were executed. It would appear that from time to time during the marriage, and even at a time when relations between the parties were more harmonious, defendant was seeking to divest his wife of any record interest in property which he was acquiring."

The evidence appears to support the conclusions the trial court reached as to the effect of this evidence. After this informal opinion the court allowed the defendant to produce any additional evidence he desired in respect to the character of the trust fund. In a subsequent opinion of September 27, 1957, based on additional evidence the judge said:

"With reference to the Chicago trust, the defendant was permitted to introduce additional evidence. The additional evidence introduced is not persuasive and has not changed the view of the court. The observations which the court made with reference to the testimony of the defendant in the opinion heretofore rendered are still applicable. In the testimony given on September 24th, the defendant testified that this trust in Chicago was set up as a gift by his sister and without his knowledge and that he found out about it later. The gift was set up by a declaration of trust executed by the defendant himself as a trust agreement between him and the

bank. I am still of the belief that this is community property.''

Defendant never produced the testimony of his sister, Sonja, which evidence was available, if true, that she set up or "gave" the original $20,000 into the trust fund for the benefit of the defendant. There was no evidence produced that any gift tax was paid thereon. The record does show that plaintiff testified she learned about the trust fund account from Mr. Henie and his sister Sonja, after it was set up and he did tell her his sister had given it to him. It also appears that Mrs. Henie, as it is the custom in her country to be a "housewife," left all of the business details to her husband and fully trusted him; that he obtained a general power of attorney from her for this very purpose, and that all she knew of the trust fund was what her husband told her.

 Appellant argues that this evidence is not sufficient to support the finding of the trial court that it was community property, claiming

"A. Before the property will be presumed to be a community asset, plaintiff has the burden of proving that the property was *acquired* during the marriage *and* while the parties were domiciled in California.

"B. There is no presumption as to when property is acquired, and plaintiff has offered no evidence as to when the $20,000.00 was acquired by the defendant. The evidence, when viewed most favorably to plaintiff, is that the parties lived temporarily in California at the home of Sonja Henie for about four months during the period from March, 1940, to July, 1940, and then left on Tour. (The first California State Tax Return was filed for the calendar year 1947.)

"C. Property is classified at the time of its acquisition, and remains as such in the absence of an agreement to the contrary. There being no suggestion in the pleadings or proof that the $20,000.00 trust fund was transmuted to community property, said sum, now of the value of $80,000.00, cannot be classified as community property.

"D. The evidence merely establishes that defendant 'had' $20,000.00 on July 3, 1940, and wholly fails to support the finding that the $20,000.00 was 'acquired' during marriage and while the parties were 'domiciled' in California.

"E. The evidence supports only three possible conclusions as to the source of the $20,000.00: (1) that it was money defendant had earned; (2) that it was a gift from defendant's

sister; or (3) that it was money derived from the sale of defendant's father's business. None of these conditions justifies the classification of these funds as community property.'' (Citing such authority as sec. 164, Civ. Code; *Estate of Frees,* 187 Cal. 150 [201 P. 112]; *Fidelity & Casualty Co.* v. *Mahoney,* 71 Cal.App.2d 65 [161 P.2d 944]; *Estate of Niccolls,* 164 Cal. 368 [129 P. 278]; and *Estate of Bruggemeyer,* 115 Cal.App. 525 [2 P.2d 534].)

It is therefore argued that in the absence of the application of the presumption the trial court should have distributed the community property without considering the trust fund, which was his separate property, and defendant is therefore entitled to a comparable asset to replace it, and this court, under section 148 of the Civil Code, should reverse the judgment as to distribution in the interest of justice, citing *De Burgh* v. *De Burgh,* 39 Cal.2d 858 [250 P.2d 598]; *Simonton* v. *Los Angeles Trust & Sav. Bank,* 205 Cal. 252 [270 P. 672]; and *Nichols* v. *Mitchell,* 32 Cal.2d 598 [197 P.2d 550].

In reply plaintiff, in support of the finding, argues that since defendant earned approximately $40,000 each year from 1943 to 1949, it would not be unreasonable for the court to believe the defendant earned $20,000 during the 4-month period from March 1st to July 1st, 1940, when he was engaged in business on tour with his sister, Sonja, since her tours did not occupy the entire year; that she may have paid this sum or a portion of it to him in advance for services to be performed in the future; that under such circumstances it would be acquired during the marriage of the parties while residing in California, and the presumption would be applicable. There is merit to this argument. ■ Generally, uncontradicted and unimpeached testimony of a witness tending to establish an issuable fact may not be disregarded and should be accepted to establish the fact unless it is inherently improbable, but there are exceptions to the rule. ■ The most positive testimony may be overcome by circumstances in evidence that may satisfy the court of its fallacy and the court may reject that testimony although the witness is not discredited by direct testimony. (*Estate of Bernatas,* 162 Cal.App.2d 693 [328 P.2d 539].)

■ At the trial defendant testified he liquidated his fur business in Norway for $100,000, and brought those funds to the United States. Although defendant did not directly testify that any of this claimed money went into the trust fund, his counsel suggests it might have furnished the corpus for it.

On cross-examination, as to any bank or banks where defendant kept this large sum of money, he replied "he did not recall" that he put it in any bank; that he was too much concerned about putting money in banks; that he was traveling around the country with thousands of dollars in his suitcases and that he put some in safe deposit boxes, but he could not remember where. His next story was that his sister gave the money to him; that she arranged for the creation of the trust; that he had nothing to do with it, and did not sign anything; that he did not learn of it until after its establishment when his "mother called up from New York," and that he gave no consideration for it. The trust agreement was obtained and received in evidence. It showed on the date thereof that defendant was the *donor* and it bore his signature, which defendant then admitted. In defendant's deposition, previously taken, he stated all the properties and other assets of the couple were obtained from his earnings during the 18 years of their marriage; that he brought only about $4,000 to the United States and the rest was earned here. He, at that time, made no claim that he owned any separate property. In his deposition he said he had received about five or six thousand dollars from the sale of a small mountain cabin and other real property upon his father's death; that this sum was not received until about three years prior to this trial and that sum was put in the subdivision property in Oceanside; that the $4,000 brought here was used for living expenses; that although he had taken over his father's fur business in Norway in 1936, it was then losing money and upon his assuming control a strike occurred which lasted for one year and it was not a profitable venture. There is evidence that when in the United States he would send his wife a 20-dollar bill in his letters to her because "there just was not anything there in Norway." Defendant was served with a subpoena *duces tecum* seeking examination of his books, records, and tax returns for 1941. He claimed his accountant had them and the accountant claimed he returned them to defendant. In short, they were not produced. It becomes apparent that the testimony of the defendant was discredited to a great extent and the trial judge was justified in rejecting it. ■ Ordinarily, whether or not the presumption under section 164 of the Civil Code is applicable or should be applied is a question of fact for the trial court, and its conclusions, unless manifestly without sufficient support in the evidence, are conclusive on appeal.

(*Nichols* v. *Mitchell*, *supra*; *Simonton* v. *Los Angeles Trust & Sav. Bank*, *supra*.) We conclude the evidence was sufficient to apply the presumption. The finding has sufficient evidentiary support.

Lastly, it is argued that an excessive portion of the community assets was awarded to plaintiff, contrary to a stipulation that default of the defendant would not militate against him. On division of the community property in an action for divorce for extreme cruelty, the court is authorized to award the innocent spouse more than one-half of the community property. (Civ. Code, § 146, subd. 1; *Barham* v. *Barham*, 33 Cal.2d 416 [202 P.2d 289].) A reviewing court will be slow to interfere with the trial court's division of community property in those divorce actions in which the division lies in such court's discretion. (*LeFiell* v. *LeFiell*, 108 Cal.App.2d 321, 324 [239 P.2d 61].) No abuse of discretion here appears. It does not affirmatively appear that the trial judge did not take full cognizance of the stipulation agreed upon.

Judgment affirmed.

Mussell, J., and Shepard, J., concurred.