[Civ. No. 9651.   Third Dist.   Mar. 2, 1960.]

MAXINE WILLIAMS, Plaintiff and Appellant, v.
ROBERT I. WILLIAMS, Defendant and Appellant.

Frank W. Shuman for Plaintiff and Appellant.

Jerrald K. Pickering and McGilvray, McGilvray & Cameron for Defendant and Appellant.

PEEK, J.—Defendant appeals from an interlocutory decree of divorce granted to plaintiff upon the ground of extreme cruelty. It is his contention that the court erred in refusing to grant an annulment to him upon the ground of fraud, and that the court further erred in the disposition made of a ranch acquired during the marriage. Plaintiff cross-appeals from that portion of the decree awarding certain shares of stock to defendant as his separate property and from the order of the court that the parties stand their own costs.

By her complaint plaintiff sought a divorce upon the ground of extreme cruelty. Defendant's answer denied generally the allegation of cruelty. By cross-complaint, in the first cause

thereof, he sought a divorce upon the like ground of extreme cruelty and by a second cause sought an annulment upon the ground of fraud. The record shows that on the application for the marriage license plaintiff represented herself to be a widow. At the trial she testified that this was done at defendant's request for the reason that his family would not approve of his marriage to a divorcee. She further stated that prior to the marriage she had made full disclosure of her marital history to him. Defendant on the other hand testified that he knew nothing of plaintiff's previous marriages until he accidentally learned of them in the early part of 1957; that had he been apprised of her status as a divorced woman he could not and would not have consented to the marriage because of his religious convictions as a member of the Presbyterian faith; that upon discovery that his wife had been previously married and divorced, he broke off their relationship; and that since that time they have not cohabited as husband and wife.

The record further discloses that within a year following the marriage the parties moved to Shasta County where they purchased a ranch for the sum of $30,000. Plaintiff contributed at least $1,000 and possibly more from her separate funds toward the purchase price of the ranch. The balance was paid by defendant from his separate funds, and at the time of trial the total purchase price had been paid in full. In addition to the cash contributed by the plaintiff, she supplied her own belongings to help furnish the home and made additional outlays from separate funds to buy more furniture and pay for improvements to the ranch. She also performed various kinds of manual labor in building the house and improving the ranch. It was her testimony that prior to the purchase of the ranch she was informed by defendant that if she would contribute to the down payment on the property and to the purchase of furniture and other things for the ranch, ". . . the deed would be put in both names in joint tenancy." Actually, however, the deed was made out to the parties describing them simply as husband and wife.

It further appears that during the marriage certain shares of stock were purchased by defendant with his separate funds. The certificates for such stock were made out to the parties as tenants in common. Defendant's testimony was that the names of both himself and his wife so appeared on the certificates because the bank which handled the transaction insisted that it be done in that fashion and also because of the

dictates of his faith. He further testified that he did not intend to give plaintiff any interest in the stock.

At the conclusion of the hearing the trial court found that defendant was guilty of extreme cruelty toward plaintiff; that plaintiff was the owner of an undivided one-half interest in the ranch; and that the certificates of stock were the separate property of the defendant. The court additionally found that all of the allegations of defendant's cross-complaint relative to extreme cruelty were untrue and that his allegations in support of his second cause of action relative to annulment were untrue and not sustained by the evidence.

In support of his main contention defendant argues that by reason of the fraudulent acts of plaintiff in concealing from him her previous marital history the trial court erred in failing to award him an annulment. He states that he is an intensely religious man of the Presbyterian faith, and that the tenets of his faith will not permit him to remarry if he becomes a divorced person. He concludes his argument with the statement that the trial court's action in denying him an annulment constituted an infringement of his constitutional right to freedom of worship.

It has long been the rule that because of its peculiar position as a silent but active party in annulment proceedings the state is particularly interested in seeing that no marriage is declared void as the result of fraud unless the evidence in support thereof is both clear and convincing. Thus it has been said: "The state has a rightful and legitimate concern with the marital status of the parties to the action, . . . and the fraud relied upon to secure a termination of the existing status must be such fraud as directly affects the marriage relationship and not merely such fraud as would be sufficient to rescind an ordinary civil contract." (*Bing Gee* v. *Chan Lai Young Gee,* 89 Cal.App.2d 877, 885 [202 P.2d 360]; see also *Mayer* v. *Mayer,* 207 Cal. 685 [279 P. 783].) Necessarily, whether the evidence in a given case meets this test is primarily a question for the trier of fact as in any other proceeding. Here the record discloses testimony by the plaintiff that prior to the marriage she disclosed to defendant her marital history, and that her use of the word "widow" on their marriage license application was at his request. His testimony was directly to the contrary. It is obvious that under such circumstances the trial court was confronted with a conflict in the evidence which

was its province to resolve. In so doing the court determined that plaintiff's allegations were sustained by the evidence and that defendant's allegations were not. Defendant argues, however, that the trial court's finding of fact must be read in light of its memorandum opinion. While it does appear from that opinion that the court felt there may have been a fraud on the part of the plaintiff, it also appears that the court was not convinced that defendant relied upon plaintiff's representations, or that "but for" them he would not have married her. ▮ In any event, however, although a memorandum opinion may be used for the purpose of explaining the ultimate decision of the court, it may not be used to contradict, change or impeach the court's findings of fact. (*Estate of Bullock*, 133 Cal.App.2d 542, 549 [284 P.2d 960]; *Tevis* v. *Beigel*, 156 Cal.App.2d 8 [319 P.2d 98].) Under the facts and circumstances as presented, we cannot say that the trial court erred in denying an annulment to defendant as prayed for by him in his second cause of action. (*Maduro* v. *Maduro*, 62 Cal.App.2d 776, 779 [145 P.2d 683].)

▮ Defendant further contends that the trial court erred in awarding plaintiff an undivided one-half interest in the ranch property. Under the provisions of section 164 of the Civil Code, when property is acquired by the parties after marriage by an instrument in which they are described as husband and wife, and unless a different intention is expressed in the instrument, ". . . the presumption is that such property is the community property of said husband and wife."

There is nothing in the deed to the ranch property which suggests a different intention, and thus the statutory presumption that this property was held by the community was applicable. Of course the presumption is rebuttable, but the burden of proof rests on the party asserting that the property is not community. ▮ Further, whether or not the presumption has been overcome is a question of fact, and the reviewing court must accept the determination of the court below as conclusive if there is any substantial evidence in the record to support it. (*Thomasset* v. *Thomasset*, 122 Cal.App. 2d 116 [264 P.2d 626].) Therefore we are faced with but one question, and that is: Was there any substantial evidence in the record to support the finding of the trial court that the ranch property was held by the community?

▮ As previously noted, although the bulk of the purchase price of the ranch came from defendant's separate

property, this alone does not overcome the statutory presumption, for there must also be conclusive evidence that defendant did not intend to make a gift of his separate property to the community. (*Hogevoll* v. *Hogevoll*, 59 Cal. App.2d 188 [138 P.2d 693].) ▮ It is apparent that the trial court was convinced that he did intend to make a gift, and we believe that the evidence, e.g., defendant's statement that the property would be taken as joint tenants, the fact that plaintiff contributed a portion of her separate property, and that both of the parties contributed a substantial amount of their time and effort to improve the property, clearly supports this finding. Since there is substantial evidence in the record to support a finding that the ranch property was held by the community, we cannot say that the trial court erred in awarding an undivided one-half interest to the plaintiff.

▮ On her cross-appeal plaintiff argues that the shares of stock purchased by defendant with separate funds and placed in both names as tenants in common should have been equally divided between them. What has heretofore been said in relation to the finding of the trial court concerning the ranch property is equally applicable here. As previously noted there was ample testimony to sustain the conclusion of the trial court that such certificates of stock were the separate property of the defendant. (See *Freer* v. *Wells Fargo Bank, etc. Co.*, 75 Cal.App.2d 150, 154-155 [170 P.2d 491]; *Hansen* v. *Bear Film Co., Inc.*, 28 Cal.2d 154 [168 P.2d 946].)

Although plaintiff has also cross-appealed from the order of the trial court relative to costs, that matter is not discussed in the brief and hence we assume it has been abandoned.

The decree is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.