[Civ. No. 19244. First Dist., Div. One. May 25, 1961.]

HELEN TANNER CARDEW, Appellant, v. GEORGE B. CARDEW, Respondent.

Livingston & Borregard, Lawrence Livingston, Isabella H. Grant and Burnett, Burnett & Somers for Appellant.

Edward M. Fellows and Lawrence T. Sutton for Respondent.

DUNIWAY, J.—In an action for divorce, plaintiff appeals from the interlocutory judgment. The court decreed that each party was entitled to a divorce on the ground of extreme

cruelty, ordered the property of the parties divided, and awarded plaintiff $400 per month alimony for one year. Although the appeal is from the whole of the judgment, appellant does not attack the portion of the decree granting her a divorce.

It is claimed (1) that appellant did not get a fair trial, (2) that the court erred in excluding certain proffered evidence, (3) that any cruelty on appellant's part before 1957 was condoned, (4) that the court erred in its findings as to the nature of the parties' interests in their home, (5) that the court did not properly divide the community property, and (6) that it was error to make a present disposition of property in the interlocutory judgment. We find error only as to points 5 and 6.

Where both parties seek a divorce, under the rule in *De Burgh* v. *De Burgh,* 39 Cal.2d 858 [250 P.2d 598], the usual rule as to the resolution of conflicts in the evidence by the trial judge applies. This is true whether he grants the divorce to only one of them (*Garten* v. *Garten,* 140 Cal.App.2d 489, 496 [295 P.2d 23] ; *Noble* v. *Noble,* 115 Cal.App.2d 786, 789 [252 P.2d 1001] ; *Thompson* v. *Thompson,* 136 Cal.App.2d 539, 540 [288 P.2d 932] ; *Gilmore* v. *Gilmore,* 45 Cal.2d 142 [287 P.2d 769]), or to both (*McClellan* v. *McClellan,* 159 Cal. App.2d 225, 227 [323 P.2d 811] ; *Benam* v. *Benam,* 178 Cal. App.2d 837, 840 [3 Cal.Rptr. 410] ; *Lawatch* v. *Lawatch,* 161 Cal.App.2d 780, 785 [327 P.2d 603] ; *Cohen* v. *Cohen,* 156 Cal. App.2d 191, 193 [319 P.2d 66]). "There can be no precise formula for determining when a cause of divorce shown against a plaintiff is to be considered a bar to his suit for divorce, for the divorce court, as a court of equity [citation], is clothed with a broad discretion to advance the requirements of justice in each particular case." (*De Burgh* v. *De Burgh, supra,* 39 Cal.2d 858, 872; *Mueller* v. *Mueller,* 44 Cal.2d 527, 530 [282 P.2d 869].)

We examine the pertinent evidence under each point, having the foregoing rules in mind.

1. *Appellant had a fair trial.*

A very earnest argument is made in appellant's briefs, with citations of various remarks of the trial judge, to the effect that the judge treated her unfairly. We have read the transcript and considered the argument, but we cannot find the bias or unfairness that is claimed. We incline to agree with respondent's counsel, that appellant's counsel,

who did not try the case, "looks at the cold print . . . and then exercises his imagination, in the sense that he, like us, not having been present, cannot accurately judge the effect of the court's comments from the cold record alone. Much depends upon matters that cannot be recorded; the expression and tone of the judge, the behavior of the attorney or witness or party addressed, and the general atmosphere of the trial.

The case against the judge is overstated, to put it mildly. For example, when appellant, who was the first witness, took the stand, the judge gave her a few brief suggestions about how to answer questions. Counsel refers to that as a "lecture," and suggests that it "could do nothing but terrify an inexperienced woman." We find nothing terrifying in it; on the contrary, it could be quite helpful to a witness. It is then stated that "when . . . [respondent] started his testimony there was no lecture." The statement is literally correct but is incomplete. Respondent's testimony covers 45 pages. After less than two pages of questions and answers, mostly preliminary, the judge gave respondent the identical "lecture" that he gave appellant.

It would serve no useful purpose to belabor the matter. Appellant's counsel concede that they "undertake a difficult task when . . . [they] attempt to establish that there was an unfair trial by a judge of high standing and reputation." After reviewing the entire record, we are of the opinion that the attempt is not successful.

2. *The court did not commit prejudicial error in excluding evidence.*

(a) *As to adulterous conduct:*

Appellant correctly urges that evidence of adulterous conduct, falling short of actual adultery, is admissible in support of a charge of cruelty. (*San Chez* v. *Superior Court*, 153 Cal.App.2d 162, 164, 165 [314 P.2d 135], and cases there cited; 16 Cal.Jur.2d 323.) The pretrial order states that the "wife contends there is adulterous conduct on the part of the husband." Nevertheless, when such evidence was offered, the court erroneously excluded it. The exclusion, however, was not prejudicial, for three reasons:

First, the only evidence offered was the receipt at the parties' home of some letters from another woman, addressed to the husband, one of which was "opened by mistake." The letters were returned by appellant, presumably to the sender. Just before the wife so testified, the court said, "Make your

offer of proof." None was made, except the testimony just mentioned. There is no suggestion that counsel had other evidence to offer. The fact that the letters were received is in evidence; their contents would be hearsay. No attempt was made to cross-examine respondent on the subject. We cannot believe that the result would probably have been different if the evidence had been received.

Second, the court awarded appellant a divorce on the ground of cruelty. This was what the evidence was offered to show.

Third, the evidence would not have been relevant to the issue of how much alimony appellant should receive, as appellant claims it would. It is true that ever since the decision of the Supreme Court in *De Burgh* v. *De Burgh, supra,* 39 Cal.2d 858, the court may, when it grants a divorce to both parties, award alimony to either, "for the basis of liability for alimony is the granting of a divorce against the person required to pay it. (See Civ. Code, § 139.)" (P. 874; see also *Gilmore* v. *Gilmore,* 45 Cal.2d 142, 148 [287 P.2d 769].) It is also true that in deciding which party shall receive alimony, the court considers the comparative fault of the two. *Mueller* v. *Mueller, supra,* 44 Cal.2d 527, 531, 532.) This the court did, and it awarded alimony to the appellant.

We think that at that point comparison of the fault of the parties had fulfilled its function. In determining the amount and duration of alimony to be awarded under Civil Code, sections 139 and 142, the court was required to consider "the circumstances of the respective parties" (Civ. Code, § 139) and it could also consider the facts that the parties had been married for only six years and had only lived together about 300 days when they separated, that there were no children, that before the marriage appellant had been self-supporting, that it was her third marriage, and that she was to receive, from the sale of community property, several thousand dollars. (*Cf.* Civ. Code, § 142.) The court's remarks on motion for new trial indicate that it did consider such matters, and desired that appellant be provided for during the period of one year, while she was seeking employment.

██ "In theory, alimony is considered to be compensation to the injured spouse for the loss resulting from the other's breach of the obligations of the marital relationship. [Citations.] ██ But the right to receive it depends not alone upon the granting of a divorce for the fault of the

opposing party, but also upon a showing that the circumstances of the parties justify the award made." (*Hall* v. *Superior Court,* 45 Cal.2d 377, 384 [289 P.2d 431].)

■ "An allowance for support must be made 'having regard for the circumstances of the respective parties.' (Civ. Code, § 139.) . . . 'Circumstances' includes practically everything which has a legitimate bearing upon the present and prospective matters relating to the lives of both parties.' [Citation.] '[I]t refers to the needs of the parties and the abilities of the parties to meet such needs; and in measuring such circumstances, consideration should be given to property owned and obligations to be met as well as to ability to earn and to actual earnings.' [Citation.]" (*Hall* v. *Hall,* 42 Cal. 2d 435, 442 [267 P.2d 249].)

In *Whitney* v. *Whitney,* 164 Cal.App.2d 577 [330 P.2d 947], this court was presented with the claim of an appellant wife that the alimony awarded to her should have been greater. She was awarded $300 per month for four years. Speaking through Mr. Justice Wood, we said (p. 580): "Appellant's argument starts with the premise that 'one aspect of alimony is that it is a penalty.' She contends that here the penalty is not in due proportion to the degree of cruelty which, she asserts, respondent committed.

"A mere reading of the applicable statute demonstrates the fallacy of her premise."

After quoting Civil Code, section 139, the opinion continues: "This does not speak of punishment of the guilty party measured by the degree of guilt. It speaks only of legal consequences which flow from conduct which causes dissolution of the marriage. In such a case the law imposes a duty to compensate the opposite party. This compensation does not take the form of exemplary or punitive damages." The opinion then quotes from *Hall* v. *Hall, supra,* and the judgment was affirmed.

■ Under Civil Code, section 139, the trial court has a broad discretion in determining the amount of alimony to be paid and the period during which it shall continue. (*McClellan* v. *McClellan, supra,* 159 Cal.App.2d 225, 228; *De Santo* v. *De Santo,* 162 Cal.App.2d 126, 128 [328 P.2d 463].) Many cases uphold awards to a wife for a limited time only. We cite only some of the more recent decisions: *Blackburn* v. *Blackburn,* 160 Cal.App.2d 301, 304 [324 P.2d 971]; *McClellan* v. *McClellan, supra,* 159 Cal.App.2d 225; *Simpson* v. *Simpson,* 134 Cal.App.2d 219, 224-225 [285 P.2d 313]; *Berry*

v. *Berry,* 117 Cal.App.2d 624, 633 [256 P.2d 646] ; *Winn* v. *Winn,* 143 Cal.App.2d 184, 188 [299 P.2d 721]. Language in *McClellan* and *De Santo,* both *supra,* indicating that the court may or should consider comparative fault in fixing the amount or duration of alimony is contrary to our holding in *Whitney, supra,* and we think, should not be followed. *De Santo,* on which appellant primarily relies, does not squarely hold that comparative fault is a basis for fixing the amount or duration of alimony, although it does contain language to that effect. None of the cases it cites supports such a proposition, though some do stand for the rule that comparative fault is to be considered in deciding which party is to be awarded alimony.

(b) *As to certain letters.*

In cross-examining respondent, counsel sought to use, and offered in evidence, a group of letters written by respondent to appellant. All but two were dated or written in 1956, or before. Counsel sought to use only parts of them—the salutation, the conclusion, and selections indicating approval of or affection for appellant. The court indicated that unless the other parts of the letters were excised, he would have difficulty in avoiding reading them. It is apparent that appellant's counsel was reluctant to offer the whole of the letters, although he finally did so. Respondent's counsel objected, indicating that parts of the letters should not be made public. The court and the attorneys then retired to chambers, and after further discussion, with the consent of both counsel, the court read them. In the course of the discussion, the court indicated that respondent had testified that he had affection for appellant until 1957. This is incorrect—the most that the testimony indicates is that such affection continued until 1956.

After reading the letters, the court said: ''We will go on the record. I have looked over a sheaf of letters that Counsel for the Plaintiffs has intimated that he desires to introduce in evidence. Included among the letters are two, one dated February 21, 1958, and one dated May 29, 1958. The one in February, '58, being apparently written from Sydney, which I assume is Sydney, Australia, and the other from Tacoma, which is, I assume, Tacoma, Washington. The last two letters, that is the one of February 21, 1958, and May 29, '58, indicates a complete change in attitude of the Defendant for the Plaintiff, in so far as affection is concerned. The other letters I rule to be purely cumulative. He has stated that up to eight months prior to, I think it was, June or August of 1958, he

bore toward the Plaintiff a deep affection. These letters that are offered here indicate the affection, particularly a sexual attraction and relationship that went on between these parties. There is nothing to be gained by putting these letters in evidence. They can do a great deal of harm to both the Plaintiff and Defendant, in my humble opinion, and I will refuse to put them in the public record because nothing is to be gained except harm to both sides. That is the ruling of the Court.''

There was further discussion and the following occurred: ''Mr. Jordan [appellant's counsel] : Well, Your Honor, I see no—I had an obligation to my client. The Court: I am not going to permit them. I think it would harm both of them. I think it would do harm to both of them, irreparable damage to both of them. He, in his position with the steamship company whom she expects to receive something from in the way of support, or something of the kind, according to her cause of action, so I am refusing the admission of those letters. Mr. Jordan: *I won't attempt to get them in.''* (Emphasis added.) Counsel then *withdrew* the one letter that had been marked. If the foregoing does not constitute a withdrawal of the offer, it comes very close to it.

The letters have been brought before us by stipulation. The court's characterization of them is accurate. We think that counsel got out of them about all that he reasonably could. It is quite true, as counsel remark, that if the letters were relevant, ''It made no difference whether the author was Casanova or Louisa May Alcott.'' But the process of admitting evidence is not a mere slot-machine operation. We think that the court, having become fully acquainted with their contents, could protect both parties by refusing to admit them and thus making them a public record, especially when, as here, there was evidence of cruelty by the appellant *after* the change in attitude indicated by the letters, and the court felt that the letters were cumulative. (*Cf. Engineering etc. Corp.* v. *Longridge Inv. Co.,* 153 Cal.App.2d 404, 419 [314 P.2d 563].) The transcript makes it clear that the court relied primarily upon such cruelty.

3. *Condonation was not an issue, and in any event the implied findings are against it.*

 But, says counsel, the letters show condonation of acts of cruelty up to 1956, and should have been admitted for that reason. However, it would appear that condonation by

respondent should have been pleaded. (*Gilmore* v. *Gilmore, supra,* 45 Cal.2d 142, 147) or at least raised as an issue to be included in the pretrial order. Moreover, even if appellant's earlier conduct was condoned, such condonation was revoked by subsequent similar conduct. (Civ. Code, § 121; *Gilmore* v. *Gilmore, supra,* 45 Cal.2d 142, 147; *Benam* v. *Benam, supra,* 178 Cal.App.2d 837, 841-842.) █ "Whether there has been condonation . . . was . . . for the trial court to determine taking into consideration the circumstances of the particular case." (*Noble* v. *Noble, supra,* 115 Cal.App.2d 786, 789; *Gilmore* v. *Gilmore, supra,* 45 Cal.2d 142, 147.)

█ It is also urged that acts of cruelty of appellant subsequent to 1956 were not corroborated, so that if the letters had been admitted, thus establishing condonation of prior acts, there would be no sufficient evidence to support the award of a divorce to respondent. There were three incidents in 1957 and 1958 involving outbursts of temper on appellant's part, one in public. The separation was precipitated by a fourth such incident in 1958, a row over the use of the car, in which appellant called the police. Also, both in 1957 and 1958, she ran the parties into debt. This is partially corroborated by the last entry in a written contemporaneous record kept by appellant. In addition, she wrote to his superiors, and threatened to destroy his job. This is corroborated by two witnesses. The temper outbursts, except for the first which occurred during the honeymoon in 1952, and one on the phone, in 1958, are not corroborated.

█ It is well established that where there is clearly no collusion, as in this case, only slight corroboration is necessary. (*Benam* v. *Benam, supra,* 178 Cal.App.2d 827, 842; *Lawatch* v. *Lawatch, supra,* 161 Cal.App.2d 780, 787; *Hayes* v. *Hayes,* 181 Cal.App.2d 634, 642 [5 Cal.Rptr. 509].) █ Corroboration of a single act of cruelty may be sufficient. (*Hayes* v. *Hayes, supra.*) █ And evidence of cruelty subsequent to the filing of suit is admissible for purposes of corroboration. (*Garten* v. *Garten, supra,* 140 Cal.App.2d 489, 492.) Earlier cases, relied upon by appellant, are slightly more strict, but we think the evidence here satisfies the test of those cases. (*Percy* v. *Percy,* 188 Cal. 765 [207 P. 369]; *Gleason* v. *Gleason,* 13 Cal.App.2d 231 [56 P.2d 973]; *Wallace* v. *Clothier,* 77 Cal. App. 556 [247 P. 260]. *Cf. Belmont* v. *Belmont,* 188 Cal. App.2d 33 [10 Cal.Rptr. 227].)

We note, also, that there was far less corroboration of appellant's charges of cruelty than of respondent's.

4. *The court correctly determined the ownership of the home.*

While the evidence on this matter is somewhat conflicting, the result is reasonably clear. When the parties married, respondent had $8,690 in a joint savings account with his mother, and something over $12,000 in another savings account. The latter was changed into an account in the name of "Mr. George B. Cardew or Mrs. Helen T. Cardew." The home was purchased in 1954. At that time the entire balance in the first account ($5,567.89) and $6,000 from the second was drawn out. This totals $11,567.89. Respondent testified that the $8,000 down payment on the home came from his separate funds in these accounts. Neither shows any deposits since the marriage. (Only the current book for the second account was produced; respondent testified that appellant had the earlier book. This is not denied, and the book was not produced.) This supports the finding of the court that $8,000 of the husband's separate funds went into the purchase. The court could so find, even if we accept appellant's argument that she became a tenant in common of the second account, and that half of it became her separate property under Civil Code, section 164. The other half would still be respondent's separate property. We do not decide whether appellant's argument as to title to this account is correct, but we doubt that merely adding a wife's name to an account, which is frequently done for convenience, amounts as a matter of law to a conveyance to her under Civil Code, section 164. (*Cf. Estate of Nelson,* 104 Cal.App. 613, 618 [286 P. 439].) It seems clear that substantially the whole $11,567.89 went into the house, as considerable moneys were spent in rehabilitation and repairs immediately after the purchase.

It is also clear that none of the wife's separate money (about $2,850), went into either account. It went into a joint checking account, and was apparently used for family living expenses.

Title to the home was taken as follows: "George B. Cardew and Helen T. Cardew, his wife." The form was suggested by the title company. "There was no arrangement as to how the title was to be taken." The purchase was made while respondent, a merchant marine captain, was away on a voyage.

Civil Code, section 164, provides: "All other property acquired after marriage . . . is community property; but whenever any . . . property . . . is acquired by a married woman by

an instrument in writing, the presumption is that the same is her separate property, . . . ; except, that when any of such property is acquired by a husband and wife by an instrument in which they are described as husband and wife, . . . the presumption is that such property is the community property . . .''

Appellant asserts that the conveyance was to her and respondent as tenants in common, and that three presumptions apply: (1) that respondent made a gift to her of a one-half interest, (2) that her one-half interest is her separate property (Civ. Code, § 164) and (3) that the other one-half interest is community, because the property was acquired after marriage. She thus claims a three-quarter interest in the entire property, instead of what the court awarded her—a one-half interest in its net value after deducting an $8,000 separate interest of respondent.

She also urges that, assuming that the deed conveyed the property to the parties as community property, three presumptions still apply: (1) a presumption that it is community because it was acquired after marriage; (2) a presumption that it is community from the form of the deed, and (3) a presumption that the investment of the husband's separate funds was a gift.

The established California rule, that a presumption is evidence, is sufficiently anomalous that we are reluctant to pile presumptions on presumptions as appellant argues that we should.

We think that in this case the parties are ''described as husband and wife'' in the deed. We can see no difference between ''to A and B, his wife'' and ''to A, husband and B, wife'' or ''to A and B, husband and wife'' or ''as husband and wife.'' B cannot be ''his (A's) wife'' unless A is her husband. To hold otherwise is technical in the extreme. (*Cf. Estate of Kane*, 80 Cal.App.2d 256, 266-267 [181 P.2d 751].)

We also think that when the Legislature, in 1935, amended section 164 by adding the exception quoted above, it intended to eliminate the injustice—and unequal treatment of the spouses—exemplified in the three-fourths interest rule upon which appellant relies (see 10 Cal.Jur.2d 717, *Hogevoll* v. *Hogevoll*, 59 Cal.App.2d 188 [138 P.2d 693]), in all cases where property is conveyed to husband and wife as such, and that any language making it clear that that is the nature of the conveyance is sufficient to bring it within the exception. (This would not be true, of course, if the conveyance went on specifically to describe the parties' interests as something

other than community, such as joint tenancy or separate.) We also think that the effect of the exception is to establish but one presumption—that the property is community—the same presumption that attaches to all property acquired during the marriage under the first clause of section 164.

In the case of such property, the presumption, under Civil Code, section 164, that property acquired during marriage is community "is controlling only when it is impossible to trace the sources of specific property." (*Gudelj* v. *Gudelj*, 41 Cal.2d 202, 210 [259 P.2d 656].) " 'There is both a community and a separate interest in property purchased with separate and community funds where each contribution is clearly ascertainable.' " (*Garten* v. *Garten, supra*, 140 Cal. App.2d 489, 493.) To the same effect are *Mears* v. *Mears*, 180 Cal.App.2d 484, 500, 503 [4 Cal.Rptr. 618], and *Mason* v. *Mason*, 186 Cal.App.2d 209 [8 Cal.Rptr. 784]. *Gudelj* specifically distinguishes cases where tracing of separate funds into community property is held a sufficient basis for a finding that a separate interest therein continues from cases in which a separate interest is conveyed to the wife, such as a joint tenancy, and in which tracing alone is not enough to sustain a finding that her interest is not separate. (See 41 Cal.2d 210, 212, 213, and compare *Williams* v. *Williams*, 178 Cal.App. 2d 522 [3 Cal.Rptr. 59]; *Benam* v. *Benam, supra*, 178 Cal. App.2d 827, 844; *Hogevoll* v. *Hogevoll, supra*, 59 Cal.App.2d 188; *People* v. *One 1939 La Salle 8 T. Sedan*, 45 Cal.App.2d 709 [115 P.2d 39].)

However, even if the conveyance to the parties as husband and wife raises a stronger presumption that the property is community than does the first clause of section 164, the evidence here is sufficient to sustain the court's finding. Ordinarily, whether or not the presumption under section 164 should be applied is a question of fact for the trial court, and its conclusions, unless manifestly without support in the evidence, are conclusive on appeal. (*Henie* v. *Henie*, 171 Cal. App.2d 572, 581 [340 P.2d 1024].) Here, the court found that the presumption, as to an $8,000 interest, was overcome, and we cannot say that the finding is without support. In *Louknitsky* v. *Louknitsky*, 123 Cal.App.2d 406, 410-411 [266 P.2d 910], as in the present case, the purchase was made by the wife, in the husband's absence, and he did not know in whose name the deed was taken. This evidence, which is quite similar to the evidence in this case, was held sufficient to overcome the presumption that property conveyed to the

wife alone was her separate property. This conclusion was reached in the face of all of the presumptions on which appellant relies. (*Cf. Hogevoll* v. *Hogevoll, supra,* 59 Cal.App.2d 188.) See also *Nichols* v. *Mitchell,* 32 Cal.2d 598, 605 ff [197 P.2d 550].

In many cases in which the court says that tracing of separate funds into the property is not enough to upset the presumption, the trial court found in accordance with the presumption, and the actual holding, therefore, was that tracing is not enough to compel a reversal, i.e., does not compel a finding against the presumption. (*Cf. Williams* v. *Williams, supra,* 178 Cal.App.2d 522; *Wynn* v. *Wynn,* 170 Cal.App.2d 484 [338 P.2d 930].) Such cases are not authority for reversing the contrary finding in this case.

5. *The court erred, in one respect, in dividing the community property.*

(a) *There was no error as to the furniture.*

The only direct evidence as to the value of the furniture was appellant's testimony that it was worth $4,000. The court made no specific finding as to value. Normally, it should do so. (*Bailey* v. *Bailey,* 60 Cal.App.2d 291 [140 P.2d 693].) It awarded the furniture to appellant, and ordered payment, from community funds, of "$2,000.00 to [respondent] to offset furniture awarded to [appellant]." Respondent assumes that this is an implied finding that the value of the furniture is $4,000. This, however, is not correct. The award of $2,000 is from community funds, one half of which already belongs to respondent. Thus appellant gets the furniture, community property, at a valuation of $2,000, and respondent gets $2,000 community property, to offset it. Since appellant herself testified that the furniture was worth $4,000, she is in no position to complain.

(b) *There was error as to life insurance awarded to respondent.*

Respondent owned at the time of marriage a life insurance policy in the "face amount" of $5,000. It has been in effect since 1936 or 1937. Premiums of $111 per year, six in number, were paid from community funds. There is no evidence as to the present value of the policy, and no sufficient evidence as to the portion thereof that is community property. But the portion purchased with community funds is community, and appellant was entitled to one half of that portion. The court found that there was both a community and a separate interest in the policy, but awarded it all to

respondent. It made no finding as to the value of the community interest. The community property must be divided equally when both parties are awarded a divorce (*De Burgh* v. *De Burgh, supra,* 39 Cal.2d 858, 874; *Williams* v. *Williams,* 146 Cal.App.2d 307, 309 [303 P.2d 586]; *Diamond* v. *Diamond,* 149 Cal.App.2d 788, 790 [308 P.2d 909]; *Gilb* v. *Gilb,* 170 Cal.App.2d 379, 384 [339 P.2d 176]; *Mears* v. *Mears, supra,* 180 Cal.App.2d 484, 497).

 Nor can we offset respondent's claimed community interest in certain policies owned by appellant, on which premiums were paid from community funds during marriage. There is nothing to offset the presumption, under Civil Code, section 164, that these payments were a gift to her, and no issue as to her ownership of the policies was raised in the pleadings, at pretrial, or during the trial. At oral argument, counsel for the parties stipulated that if this issue were determined in appellant's favor, $660 could be awarded to her as her interest in the policies in question. The judgment should be modified accordingly.

6. *The court erred in making a present disposition of property.*

This error is conceded. See *Brown* v. *Brown,* 177 Cal.App.2d 387, 389 [2 Cal.Rptr. 255].

The judgment is modified in the following particulars:

(1) Paragraph 5 is modified by striking out subdivision (a) and inserting, in lieu thereof: "(a) To the payment to the defendant of the sum of $8,000, less the sum of $660, or a net sum of $7,340, and to the payment to the plaintiff of $660, to offset her interest in the life insurance policies referred to in paragraph 6 hereof."

(2) Paragraph 12 is added to the end of the judgment, reading as follows: "12. That the provisions of paragraphs 4, 5, and 6 of this judgment shall be embodied in, and shall only become effective upon, the entry of any final judgment of divorce herein."

As so modified, the judgment is affirmed. Each party shall pay his or her own costs on appeal.

Bray, P. J., and Tobriner, J., concurred.

A petition for rehearing was denied on June 19, 1961, and the opinion and judgment were modified to read as above. Appellant's petition for a hearing by the Supreme Court was denied July 20, 1961.