[Civ. No. 26389. Second Dist., Div. One. Dec. 10, 1962.]

ALBERT P. HARRIS, Plaintiff and Respondent, v. ELLEN S. HARRIS, Defendant and Appellant.

Bernard Reich for Defendant and Appellant.

Mindlin & Levy and J. D. Gluecksman for Plaintiff and Respondent.

WOOD, P. J.—Plaintiff (husband) commenced this action for divorce. Defendant filed a cross-complaint. The interlocutory judgment stated that each party was entitled to a decree of divorce. It also awarded to defendant (wife): custody of the two children subject to right of visitation by plaintiff; alimony; amounts for support of children; and attorney's fees. It also awarded certain property to each party.

Defendant appeals from the judgment, except several provisions thereof which relate to: her decree of divorce; custody and support of children; and certain items of property awarded to her. In other words, her notice of appeal is to the effect (after noting the exceptions) that she appeals from the provisions of the judgment (1) awarding a decree of divorce to plaintiff; (2) awarding certain items of property to him; and (3) awarding alimony and attorney's fees.

Appellant contends that the court erred in the following respects: in granting a decree of divorce to plaintiff; in awarding only $500 a month as alimony; in determining the extent, value, and division of the community property; and in not awarding a larger fee to her attorney.

The parties were married in 1948. The two children, at the time of the trial, were 8 and 10 years of age, respectively.

The court found, as follows: Each party treated the other party in a cruel manner and thereby inflicted grievous mental

suffering. The community property (which is described in the findings) is of the total value of $251,959.38. Each party owns separate property (described in the findings). The parties are proper parties to have the custody of the children. It was necessary for defendant (wife) to employ an accountant in connection with the action. The reasonable value of the accountant's services is $2,262.50, and the unpaid balance thereof is $1,450. The reasonable value of the services of defendant's attorney is $10,000, and the unpaid balance thereof is $6,500. Certain bills, in the total amount of $1,162.58, incurred in connection with maintaining community property, are unpaid. Plaintiff's income was approximately $43,000 a year for 1959, 1960, and 1961. Gifts made by plaintiff to his sister from 1957 to 1960, aggregating $12,000, were made from the community property, and "the court considered said fact in arriving at the amount of community property (or cash in lieu thereof) awarded to defendant."

The interlocutory judgment provided, in part: Each party is entitled to a decree of divorce. The community property is divided as follows: To defendant—the family home and furniture; Ford automobile, and $32,449.33 "in cash (in lieu of kind)." To plaintiff—other property described therein (consisting of shares of stock in various corporations, and interests in cash value of life insurance policies).

The interlocutory judgment also provided: Certain personal property described therein (consisting of jewelry and $3,000 cash) is the separate property of defendant. Certain other personal property described therein (consisting of jewelry, cash, corporation stock, and insurance policies) is the separate property of plaintiff. Custody of the minor children is awarded to defendant, subject to right of reasonable visitation by plaintiff. Plaintiff is ordered to pay amounts or obligations, as follows: Certain obligations specified therein (consisting of property taxes, plumbing bill, automobile insurance, balance of fees for defendant's accountant and attorney) in the total amount of $9,111.28; to defendant, $600 a month for support of the children, and $500 a month alimony; all medical and dental expenses of the children, and the expense for psychiatric treatment of the son.

Appellant (defendant) contends that the court erred in awarding a decree of divorce to plaintiff.

There was evidence upon behalf of plaintiff to the

effect that defendant stated, on numerous occasions, in the presence of plaintiff, the children, and friends and relatives, that he was dumb and stupid; she compared him unfavorably with other husbands; she criticized his behavior at restaurants and at parties; and as a result of her conduct, he lost weight and became very nervous.

There was evidence upon behalf of defendant to the effect that plaintiff showed lack of interest in anything except his business affairs; he refused to take her on a trip to Europe; at social affairs he showed little interest in guests, did not participate generally in the conversation, and frequently went to sleep; a few days before Christmas in 1960, he told her that he wanted a divorce.

It appears that the evidence on behalf of each party regarding alleged cruelty of the other party was of the same general nature or classification. Under such circumstances, it would seem that if one party were entitled to a favorable decree, the other party also would be entitled to such a decree. ▮ "In each case the infliction of 'grievous mental suffering' is a question of fact to be deduced from the circumstances of the case, in the light of the intelligence, refinement and delicacy of sentiment of the complaining party. [Citations.] A correct decision must depend upon the sound sense and judgment of the trial court." *(Keener* v. *Keener,* 18 Cal.2d 445, 447-448 [116 P.2d 1].) ▮ In the present case the trial court found, as above stated, that defendant committed acts which caused grievous mental suffering on the part of plaintiff. The evidence was sufficient to support such findings. The court did not err in granting a decree of divorce to plaintiff.

▮ Appellant contends that the court erred in awarding only $500 as alimony. She argues that since plaintiff had a net worth of approximately $500,000 and an income of $43,000 a year, he had the ability to pay more than $500 a month as alimony; and that she needs more than that amount for her support. She introduced in evidence a schedule of expenses of the family (including plaintiff) for the year 1960, which stated that the total amount of such expenses was $20,169. She also presented in evidence a schedule of amounts allegedly needed monthly (at the time of trial —in 1961) for the support of herself and the children. The total amount required monthly, as shown by the schedule, was $1,762 (i.e., $21,144 a year). In other words, it appears

that defendant asserted that the amount now required for the support of herself and children for a year was more than the amount required to support the whole family during the preceding year. ▮ The matter of determining the amount to be awarded for the support of the wife and children was for the trial court in the exercise of a sound legal discretion. (See *Whitney* v. *Whitney*, 164 Cal.App.2d 577, 581 [330 P.2d 947].) ▮ In the present case it cannot be said that the trial court abused its discretion in awarding $500 as alimony.

Appellant also contends that the court erred in determining the extent, value, and division of the community property. ▮ "When a divorce is granted to both parties . . . the community property must be equally divided." *(De Burgh* v. *De Burgh,* 39 Cal.2d 858, 874 [250 P.2d 598].)

Defendant contends that the community property was not divided properly.

She argues, with reference to dividing property, that certain shares of corporation stock, which were found to be plaintiff's separate property, should have been found to be community property. ▮ At the time of the marriage, plaintiff was employed by Union Manufacturing Company, a partnership, in which he owned an interest of approximately 8 per cent. The other interests therein were owned by his father, mother, and sister. From January 1, 1948 (the month preceding the marriage) to December 1953 (when partnership assets were transferred to a corporation) plaintiff withdrew $69,600, as salary, from the partnership, and the partnership paid $7,525.34 of his income taxes. During the same period, plaintiff did not withdraw $31,291.90 which had accrued as his share of the partnership profits, and that amount was credited to his capital account on the books of the partnership. On December 1, 1953, the partnership assets were transferred to a corporation which the partners had formed. At that time the amount of plaintiff's capital account, as shown by the books of the partnership, was $112,398.11, and he received 7,685 shares of corporation stock in exchange for his partnership interest. Defendant argues that the partnership profits which had accrued and had not been withdrawn by plaintiff after the marriage and prior to the transfer of the partnership assets to the corporation ($31,291.90) were community property, and therefore 27.84 per cent of the stock (2,139½ shares) was community property. As above indicated, plaintiff owned an 8 percent interest in the part-

nership at the time of the marriage, and the corporation stock which was issued to him was in exchange for his partnership interest, including profits of the partnership which had accrued and had not been withdrawn by him. While plaintiff was the owner of such interest in the partnership (1948 to 1953) he received a salary ranging in amounts from $7,950 to $10,400. There was no evidence that the amount which he received as salary was not fair compensation for his services. He testified to the effect that the partners had agreed that he and his father should draw ''so much salary.'' He testified further to the effect that his salary did not include his share of the profits; and that whether or not he worked there, he would have received the profits accruing from his partnership investment. The court found that the stock was the separate property of plaintiff. ■ The court did not make an express finding that the amount which plaintiff received as salary was full compensation for his services, but in view of the express finding that the stock was his separate property, there is an implied finding that the amount he received as salary was full compensation for his services and that the partnership profits which he did not withdraw were profits accruing from his partnership investment. ■ The evidence was sufficient to support the finding that the stock was plaintiff's separate property.

■ Defendants argues further, as to division of the property, that the court erred in determining the value of shares of corporation stock (which were awarded to plaintiff) in that the value was determined as of September 5, 1961, whereas the value should have been determined as of November 17, 1961 (the date of the interlocutory judgment). She also asserts that the number of shares, on which the value was based, was incorrect. She introduced in evidence a summary of the assets of the parties, which summary had been prepared by accountants employed by her. The summary listed the number and market value of shares of stock of eight corporations, which shares the court found to be community property. The value of the shares, as shown thereon, was $94,447.05. On August 8, 1961, during the trial, the parties stipulated to certain changes with respect to the number of shares shown on the summary, and those changes were made on the summary. The value as shown on the summary was not changed. Statements then made by the attorneys were to the effect that the court might determine the

market value by reference to newspapers of that date. The judge found that the value of the stock was $94,447.08. Defendant asserts that, according to the Wall Street Journal for November 17, 1961 (date of interlocutory judgment), the bid price of Union Bank stock was $98 but the court took "the $86.00 figure of September 5, 1961." The summary referred to above shows that the community property included stock in seven corporations in addition to the Union Bank stock. Defendant has not shown that the market value of the stock of the Union Bank stock and the stock of the other corporations, as shown by the newspapers of August 8, 1961, was in excess of the value found by the judge. It does not appear that the court erred in determining the value of the stock.

Defendant argues that there was no evidence as to the value of the community interest in "the El Paso joint venture" of plaintiff and his sister, and therefore the community interest therein should have been divided equally in kind. In 1959 plaintiff and his sister purchased real property in El Paso, borrowed $145,000 from a bank, and constructed a building on the property. He testified that he contributed $25,000 to the joint venture, and that he lent $20,000 "to the joint venture." Defendant introduced in evidence a financial statement with respect to the venture, which statement had been prepared by an accountant and was dated December 31, 1960. That statement showed that plaintiff and his sister had equal interests in the $46,822.19 capital of the venture; that a $20,000 note was payable to plaintiff; and that notes for $237,000 were payable to a bank and to plaintiff's parents. The court found that the interest of plaintiff in the venture was community property; that $25,000 of the interest was a capital contribution; and that $20,000 thereof was a loan. The court found that the value of the community interest in the venture was $45,000, basing the finding upon the amount of plaintiff's contribution and the amount of his loan, that is, the cost of his interest. Cost may be considered "as a circumstance tending to show value" (*Greenebaum* v. *Taylor*, 102 Cal. 624, 627 [36 P. 957].) There was no evidence that the interest was of a value greater than the cost. The court did not err in finding that the value was $45,000.

Defendant argues further that the evidence was insufficient to support the finding that the family home

(awarded to her) was of the value of $85,000. There was evidence that the home was purchased in 1955 for $58,000; and that $16,815.01 was spent for improvements (total $74,815.01). Plaintiff testified that the present value of that property is $85,000. The evidence supports the finding.

Defendant argues further that the court, in dividing the community property, did not take into account $12,000 of community funds which plaintiff had given to his sister, and thereby he was awarded $6,000 more than an equal division of those funds. In a minute order, the court listed items of community property and the value thereof. The order did not refer to the gifts in the amount of $12,000. Defendant asserts that, by reason of such omission, the court failed to consider that amount in dividing the property. In the formal findings, signed by the judge, it is stated that plaintiff made gifts in the amount of $12,000, from community property, to his sister, and that the court considered that fact in arriving at the amount of community property awarded to defendant. It thus appears that, irrespective of the omission of the "gifts" item from the minute order, the court did take that item into account in determining the awards of community property.

In the matter of dividing the community property, it appeared that shares of stock and other items which plaintiff desired to keep were of a value in excess of half the value of the community property. In order to make such a division of the property, it appears that the court ordered that plaintiff pay to defendant an amount of money equal to the value of such shares and items over and above such half value of the community property.

The award of community property to defendant consisted of certain property of the value of $95,627.25 and $32,449.38 in cash, making a total of $128,076.63.

The award of community property to plaintiff consisted of property of the value of $156,332.16 (and he was required to pay defendant $32,449.38)—with the result that the net value to him was $123,882.78. He was also ordered to pay certain obligations amounting to $9,111.28—making a net total for plaintiff of $114,771.50.

Defendant contends that the amount of $10,000 awarded as a fee for her attorney was wholly inadequate. ▊ The determination of the amount of attorney's fees is primarily for the trial court (*Newbauer* v. *Newbauer*, 95 Cal.App.2d

36, 40 [212 P.2d 240]), and such determination will not be reversed except on the ground of an abuse of discretion. *(Heck v. Heck,* 63 Cal.App.2d 470, 476 [147 P.2d 110].) In the present case, there was no abuse of discretion.

In view of the above conclusions, it is not necessary to determine other contentions.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 6, 1963.