[Civ. No. 27578.   Second Dist., Div. Two.   Mar. 23, 1964.]

THELMA DICKSON, Plaintiff and Respondent, v. LINTON
J. DICKSON, Defendant and Appellant.

Joseph R. Grillo for Defendant and Appellant.

Richard C. Cumming for Plaintiff and Respondent.

ROTH, J.—In disposing of this divorce action wherein the parties complained against each other, the trial court granted a divorce to each of the parties, divided the property, awarded custody of the minor children to the mother (respondent) with rights of visitation to the father (appellant) and awarded attorney's fees for respondent.

Appellant complains of everything that was done. He asserts no extreme cruelty was proved against him, that he, on the other hand, did prove extreme cruelty against his wife, and that the divorce should have been awarded to him alone.

We have examined the record and without detailing the evidence, we are satisfied that although it is not abundant and the corroboration is not overwhelming, there is sufficient corroborative testimony to justify the court's finding of extreme cruelty against respondent and vice versa. In this connection, it may be noted that appellant's counsel in one of his arguments to the trial court, as the case was in the process of being concluded, asserted " . . . We will admit . . . the record shows without dispute that Mr. Dickson has made derogatory remarks about Mrs. Dickson. . . . "

It is settled as a matter of law that a single act of cruelty may be sufficient on which to base a decree of divorce and that where no collusion exists and the corroboration is slight, the sufficiency of the evidence is for the trial judge. (*Cardew* v. *Cardew*, 192 Cal.App.2d 502 [13 Cal.Rptr. 620]; *Schulze* v. *Schulze*, 206 Cal.App.2d 330 [23 Cal.Rptr. 693]; *Negley* v. *Negley*, 82 Cal.App.2d 355 [186 P.2d 151].)

The parties were married on September 2, 1946, and separated on June 19, 1962. There are three children of the marriage, two daughters and a son. The latter was born on August 21, 1958. The evidence showed that respondent was

41 years old, that she was under the care of several doctors and had no outside income, had no special training and had not been employed for approximately 20 years. Appellant earned $720 gross per month which amounted to approximately $600 per month take-home pay, and in addition, had the use of a company car and received an allowance for entertainment expense. The trial court awarded respondent as alimony the sum of $100 per month for a period of one year; $50 per month for the further period of two years, and thereafter the sum of $1.00 per month, until the further order of the court. In the form of additional alimony, the court awarded $72 per month and specified that said $72 per month was to be applied as a monthly payment on the encumbrance to a parcel of real estate consisting of a house in which the parties and their children lived.

In addition, the court awarded $60 per month per child for two children, as the eldest child was self-supporting.

Appellant argues that these awards were excessive, particularly the alimony award in view of his limited earning capacity. The awards detailed, exclusive of allowance for attorney's fees, total for the first year $292 per month and for the following two years $242 per month.

It is thoroughly settled that the trial court has broad discretion in making an award of alimony and that such discretion will not be interfered with on appeal unless abused. We find no such abuse. (*Schulze* v. *Schulze, supra,* 206 Cal.App.2d 330; *Blankenship* v. *Blankenship,* 212 Cal.App.2d 736 [28 Cal.Rptr. 176].)

The trial court disposed of the real property of the parties which consisted of a home hereinbefore referred to in which the family was living, by awarding the exclusive possession of the home to respondent and the minor children of the parties ''. . . so long as said residence is used as a home for the minor children of the parties, said possession is to remain in [respondent] until the last surviving minor child attains majority, marries or leaves home, or until such time as [respondent remarries or until such time as [respondent] no longer retains custody of said minor children. At such time, the house is to be sold and the equity to be divided equally between [respondent] and [appellant]. . . .''

In respect of the division of said real property, appellant contends that the downpayment made thereon was his separate property. The evidence showed he came to California in June 1948, bought the house in question on July 8, 1948, while his wife was still out of the state, using $1,800 as

a downpayment, which he testified was his life savings. However, he took title to the house in the name of himself and wife as joint tenants. Respondent followed with the two girls and joined appellant in the same month the house was purchased, to wit: July 1948. The only evidence in the record that the $1,800 was appellant's separate property, was his testimony that said $1,800 comprised his "life savings" from Pennsylvania. The parties had been married for approximately two years. All subsequent monthly payments on the house were made with community funds. Respondent testified that in a discussion she had with appellant after the purchase of the home, she said: "... I owned half of his community property, and I was always under the impression that the woman owned half of what a man owned in community property." The excerpted testimony is nowhere specifically denied. ██ The law is clear that a husband and wife may change the nature of their property by express or implied agreement. (*Tomaier* v. *Tomaier*, 23 Cal.2d 754 [146 P.2d 905].) ██ The court was justified in holding the real property to be community real property.

██ Appellant also contends that a balance of community personal property was unevenly divided. The court awarded respondent: a 1955 Ford; the household furniture and furnishings; two insurance policies with a combined value of $2,000; one half of the stock in Container Corporation of America, held in trust by the corporation. Appellant was awarded: two insurance policies with a combined value of $2,000, and one half of the aforementioned stock, plus all increments and additions to the stock trust after June 30, 1962. Appellant asserts this division awarded to respondent $3,000 more than was awarded to appellant.

██ An uneven division is contrary to the rule that where each party is granted a divorce upon the grounds of extreme cruelty, the community property must be evenly divided. (*DeBurgh* v. *DeBurgh*, 39 Cal.2d 858, 874 [250 P.2d 598]; *Mears* v. *Mears*, 180 Cal.App.2d 484 [4 Cal.Rptr. 618].) ██ However, appellant in his brief offers to accept the division of community personal property as awarded in the judgment notwithstanding his assertion that the property awarded his wife was valued in excess of $3,000 more than the property awarded to him, if the trial court in respect of its division of stock and cash in Container Corporation of America accepts an interpretation of its judgment, as respondent has interpreted the judgment in her brief.

The judgment in dealing with assets of the parties in Container Corporation of America insofar as it makes an award to respondent, is as follows:

"One-half of the stock and cash in Container Corporation of America, the Container Common Stock Trust standing in the name of LINTON J. DICKSON, as such stock and cash existed as of June 30, 1962."

In the same judgment in making the award to appellant, the court adjudged:

"One-half of the stock and cash in Container Corporation of America, the Container Common Stock Trust standing in the name of LINTON J. DICKSON, as such stock and cash existed as of June 30, 1962, *plus any and all increments and additions to said trust after June 30, 1962.*" (Italics added)

Respondent, in her brief says:

"The retirement fund was divided unequally between Plaintiff and Defendant. The retirement fund was divided with 1/2 as of June 30, 1962, going to Plaintiff, and 1/2 to Defendant as it existed on June 30, 1962, plus all increments and additions to said trust after June 30, 1962.

"All increments and additions would cover interest, stock dividends and stock splits on the entire fund including those increments and additions which would normally inure to the benefit of Plaintiff's 1/2 interest. Also there would be the normal addition to the stock trust which would incur from June 30, 1962 to the date of trial and to the date of the Final Decree. The Court must have taken these added benefits into consideration in making the division of community property in order to arrive at as near an equal split as was possible under the circumstances, since the Finding of Fact and Conclusions of Law obviously made an unequal division of the stock trust in Defendant's favor."

Appellant says in his brief:

"Appellant interprets the term 'stock dividends' to mean cash dividends paid on the stock owned by plaintiff in said stock trust, together with dividends paid in the form of stock other than cash. With this understanding, and subject to the Court's approval, appellant accepts said argument as a stipulation to the effect that all interest, cash dividends, stock dividends and stock splits earned or accrued to the benefit of the entire trust fund after June 30, 1962 (including the half awarded to plaintiff) are for the benefit and account of defendant. With said stipulation appellant abandons his point that the community property was unequally divided."

■ Appellant's final complaint is that the court abused its discretion in awarding an additional attorney's fee in the sum of $250 to respondent's counsel, payable at the rate of $15 per month. It appears to be admitted that the trial consumed two court days. No criticism is made of the original allowance to respondent's attorney; nor is the amount brought to our attention. ■ It is thoroughly settled as a matter of law that the amount of counsel fees rests in the discretion of the trial court and that in the absence of a clear abuse of such discretion, the amount fixed will not be disturbed on appeal. (*Blankenship* v. *Blankenship, supra; Primm* v. *Primm,* 46 Cal.2d 690 [299 P.2d 231].)

■ The judgment is affirmed in all respects except that it is hereby modified in accordance with respondent's interpretation of the judgment in respect of stock and cash in the Container Corporation of America, and appellant's acceptance of said interpretation, on condition that the trial court accepts such interpretation. If such interpretation is accepted by the trial court, then the trial court is directed to modify the judgment to reflect said interpretation. If the trial court does not accept said interpretation, then the trial court is directed to modify the judgment so that there will be an equal division of the community personal property.

Herndon, Acting P. J., and Kincaid, J. pro tem.,* concurred. curred.

---

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.