[Civ. No. 22250.   First Dist., Div. One.   Sept. 27, 1965.]

LU HONG, Plaintiff and Appellant, v. SING CHOON HONG, Defendant and Respondent.

Charles F. Wong and Orville C. Pratt for Plaintiff and Appellant.

Richard J. Swan for Defendant and Respondent.

SIMS, J.—Appellant wife, as plaintiff and cross-defendant in two cross-actions for divorce which were consolidated for trial, has appealed from an interlocutory judgment of divorce which granted each party the right to a divorce from the other, and provided for the custody and support of the minor children of the parties, for the support of the wife, for the payment of certain outstanding medical bills, for division of the community property and for the payment of attorneys' fees and costs.

Her contention on appeal is limited to the question of the disposition of the community property by the trial court. She asserts that the court failed to divide the community property equally as required under controlling decisions, and that it was prevented from doing so because of the lack of sufficient evidentiary data.

The parties agree that the applicable rule for division of the community property is that set forth in *DeBurgh* v. *DeBurgh* (1952) 39 Cal.2d 858, 874 [250 P.2d 598], as follows: ''Section 146 of the Civil Code provides that if the divorce is granted for extreme cruelty, the court may apportion community property as it deems just, but that statute has been interpreted to permit an award of more than half of the community property only to an innocent spouse. [Citation.] When a divorce is granted to both parties, neither is innocent within the meaning of this rule, and the community property must be equally divided.'' (See also *Dickson* v. *Dickson* (1964) 225 Cal.App.2d 752, 756 [37 Cal.Rptr. 718]; *Arruda* v. *Arruda* (1963) 218 Cal.App.2d 410, 413 [32 Cal.Rptr. 257]; *Harris* v. *Harris* (1962) 210 Cal.App.2d 559, 564 [26 Cal.Rptr. 882]; *LeVanseler* v. *LeVanseler* (1962) 206 Cal.App.2d 611, 613 [24 Cal. Rptr. 206]; *Schulze* v. *Schulze* (1962) 206 Cal.App.2d 330, 335 [23 Cal.Rptr. 693]; *Bordin* v. *Bordin* (1961) 193 Cal. App.2d 132, 134 [13 Cal.Rptr. 837]; *Cardew* v. *Cardew* (1961) 192 Cal.App.2d 502, 517 [13 Cal.Rptr. 620]; *Lyons* v. *Lyons* (1961) 190 Cal.App.2d 788, 791 [12 Cal.Rptr. 349]; *Mears* v. *Mears* (1960) 180 Cal.App.2d 484, 497 [4 Cal.Rptr. 618]; *Gilb* v. *Gilb* (1959) 170 Cal.App.2d 379, 384 [339 P.2d 176]; *Diamond* v. *Diamond* (1957) 149 Cal.App.2d 788, 790 [308 P.2d 909]; *Williams* v. *Williams* (1956) 146 Cal.App.2d 307, 309 [303 P.2d 586].)

The record reflects that the court found that the community property consisted of (1) real property in the City of Benicia, together with "(2) . . . improvements situate on said property including furnishings and equippage [*sic*] for living quarters and the laundry business maintained therein"; (3) a 1960 Volkswagen panel truck; (4) shares of Pacific Gas and Electric Company stock standing in the name of plaintiff; (5) a note and claim in bankruptcy against the Pickman Trust Deed Corporation; and (6) a National Service Life Insurance Policy insuring the life of respondent. No finding was made in respect of the value of any or all of the foregoing items of property.

In its conclusions of law and interlocutory judgment the court awarded items (1), (2), (3) and (6) to respondent, and items (4) and (5) to appellant, and further provided that respondent should pay appellant for the latter's interest in community property which was awarded to the respondent, the sum of $7,000 in monthly installments of $150 or more per month with interest on the unpaid balance at the rate of 7 per cent per annum from March 1, 1964.[1]

██ Where the court is required to make an equal division of the community property it should not attempt such a distribution without first ascertaining the value of the respective items to be divided. (*Cardew* v. *Cardew, supra,* 192 Cal.App.2d 502, 517; *Mears* v. *Mears, supra,* 180 Cal.App.2d 484, 505; and see *Visini* v. *Visini* (1963) 212 Cal.App.2d 183, 189 [27 Cal.Rptr. 782].) ██ Similarly the court cannot provide a specific payment in lieu of one spouse's community interest in property without ascertaining the value of that property. (*Villafuerte* v. *Villafuerte* (1954) 125 Cal.App.2d 466, 469 [270 P.2d 526]; *Forbes* v. *Forbes* (1953) 118 Cal. App.2d 324, 326 [257 P.2d 721]; and *Bailey* v. *Bailey* (1943) 60 Cal.App.2d 291, 296 [140 P.2d 693].)

Respondent would escape the effect of the foregoing rules by resort to general principles such as: "Findings must be liberally construed to support the judgment. [Citations.] Uncertainties in the findings should be resolved in such manner as to uphold, rather than defeat, the judgment. [Citation.]

---

[1] The findings of fact and conclusions of law reflect that respondent was also ordered to reimburse appellant for her separate property for which he had failed to account in the sum of $1,500 payable at the same rate following the completion of the above payments. The copy of the interlocutory judgment contained in the record fails to show this principal sum either because of clerical error in the preparation of the record or in the preparation of the judgment itself.

A judgment will not be reversed for a failure to find on some of the issues if the omitted finding is implicit in the express findings. [Citations.] A finding of facts, from which a conclusion of the existence of the fact in issue follows, is equivalent to a finding of such fact. [Citation.]'' (*Pry Corp. of America* v. *Leach* (1960) 177 Cal.App.2d 632, 636 [2 Cal. Rptr. 425]; and see *Hicks* v. *Hicks* (1962) 211 Cal.App.2d 144, 149 [27 Cal.Rptr. 307]; and *McKinley* v. *Buchanan* (1959) 176 Cal.App.2d 608, 612 [1 Cal.Rptr. 573]; and cf. Code Civ. Proc. § 634, as amended 1959); and ''A party may not complain of the failure of the court to make a finding that would necessarily have been adverse to him.'' (*Id.*, p. 637; and see *Maloof* v. *Maloof* (1917) 175 Cal. 571, 573 [166 P. 330]; and *Winslow* v. *Gohransen* (1891) 88 Cal. 450, 452 [26 P. 504].) There is nothing in the express findings to which reference has been made that can supply a finding of value, unless it be a conclusion that the total value of the property distributed to respondent exceeded that distributed to the wife by $14,000. The second principle would come into play if the evidence in fact is sufficient to sustain a finding that appellant received property equal to or greater in value than that received by respondent. (See *Hicks* v. *Hicks, supra,* 211 Cal.App.2d 144, 162; *Harris* v. *Harris, supra,* 210 Cal. App.2d 559, 567; *Cardew* v. *Cardew, supra,* 192 Cal.App.2d 502, 516.) This is not a case where the findings and judgment must be sustained because the record on appeal does not include the oral proceedings (cf. *Arruda* v. *Arruda, supra,* 218 Cal.App.2d 410, 414-415 and 418). Insofar as the judgment is dependent upon implied findings to demonstrate that the appellant received thereunder property and cash of a value not less than half the total value of the community property, the situation is similar to that presented in *Mears* v. *Mears, supra,* 180 Cal.App.2d 484 wherein findings of fact and conclusions of law had been waived. The opinion of this court recites: ''[W]here findings of fact and conclusions of law are waived, every intendment is in favor of the judgment, that the assumption will be made that the trial court found every fact essential to support the judgment, and that findings will be implied in favor of the successful litigant upon all of the issues raised by the pleadings. [Citations.] The latter rule is subject to the qualification, however, that *where the transcript is before the reviewing court* (as it is here), the court is not required to indulge in an assumption as to the sufficiency of the evidence to support the implied findings. The sufficiency of the evidence will be determined from an examination of the

evidence itself. [Citation.] Where the transcript of the evidence is before the reviewing court it will not weigh the evidence to determine what is true and what is not true, but it will search the record for the purpose only of determining whether there is substantial evidence supporting the judgment and will resolve all doubts in favor of the judgment. [Citations.]'' (Pp. 497-498.)

So here it is necessary to turn to the evidence to determine whether it is sufficient to sustain an implied finding that the community property was divided without prejudice to appellant's right to an equal share.

The testimony concerning the real property, improvements and business embraced in items (1) and (2) is as follows: Respondent testified that within 10 or 11 years prior to the trial (September 1963), he built a concrete block building with living quarters upstairs at a cost of $27,000 or $28,000 and that a loan on the premises was all paid off. The court also had before it respondent's 1962 income tax return which reflected overall total gross business receipts of $19,657.50, net income of $5,901.82, and the depreciation claimed by respondent in his business. It was returned to respondent pursuant to stipulation and has not been made part of the record on appeal.

At the conclusion of the taking of testimony on September 6, 1963, counsel for respondent addressed the court as follows: ''The other item which probably should be held in suspense, Your Honor, is the evaluation of the real property located in Benicia. In the interest of economy and other problems, we haven't had it appraised. Should the Court feel this property should be divided, the Court could so instruct [appellant's attorney at the trial] and I, and we could work out a satisfactory situation, I am sure, of buying and selling, of course. So since there are several other matters that are going to hold this matter open a little bit, we feel we could accomplish that without great inconvenience to anybody or great delay.'' The court replied, ''Very well.'' No comment was made by appellant's attorney. The case was continued to September 16th and subsequently to September 23d for submission. On October 29th the court filed an opinion dated October 21st in which it indicated its decision to provide for the division of the community property as was ultimately provided in the judgment, with payments on the $7,000 to commence January 1, 1964, and to hold ''each party . . . solely responsible for his or her attorney fees and court costs in the within action,'' except as to amounts previously ordered. Findings of fact and

conclusions of law were dated February 7, 1964, and not filed until February 17, 1964, along with the judgment. The latter in accordance with the conclusions of law provides that "Each party . . . shall each pay one-half of the fees of the court reporter, court interpretor [*sic*] and *appraiser*." (Italics added.) There was filed with the record on appeal an appraisal report dated January 14, 1964, addressed to the trial judge. Respondent suggests that this appraisal is properly part of the record of the case. Appellant by failure to object to the provisions of the conclusions of law and of the judgment, and by expressly waiving the right to file a closing brief, is hardly in a position to contest this assertion. Even where each party is granted a divorce they may stipulate to the manner in which the community property should be divided (see *Dickson* v. *Dickson, supra,* 225 Cal.App.2d 752, 756-757; *Bordin* v. *Bordin, supra,* 193 Cal.App.2d 132, 134), to the value of the property (see *Lyons* v. *Lyons, supra,* 190 Cal. App.2d 788, 790), and to the manner in which the court may determine its value (*Harris* v. *Harris, supra,* 210 Cal.App.2d 559, 565-566). The appraisal reflects a market value of the laundry and residence combination of $17,500, and a fair market value of the used laundry equipment of $2,500.

No evidence was adduced as to the value of item (3), the 1960 Volkswagen panel truck, or item (6) the National Service Life Insurance Policy.

The evidence concerning item (4), the Pacific Gas and Electric stock, consisted of the testimony of appellant. She stated that she had 125 shares of "P. G. & E." stock in her possession at the time of trial, which she purchased about two weeks prior to the inauguration of President Kennedy (January 1961) with money given her by her mother before her marriage (1938)[2]; that on one occasion she paid $1,400 and on another occasion around $1,300; and that she received dividends of $30 every few months.

The evidence concerning item (5), the interest in the Pickman Trust Deed Corporation, was as follows: Respondent testified that there was $3,500 invested in appellant's name, and $3,000 in his name; that he thought $2,000 had been returned on his account; that they had returned his money, 10 per cent each time, but that he did not know whether he would now receive the balance or not. Appellant testified she had a $3,000 deposit with the company. It was stipulated that

---

[2]This stock was claimed by appellant as her separate property, but the trial court found, in accordance with respondent's contention, that it was community property.

the Pickman Trust Deed Corporation was "a ten per center" which was in bankruptcy, that the deposit was unsecured as no mortgage or deed was ever assigned, and that the ultimate return on the investment was unknown at the time but probably would be substantially less than a full return.

An analysis of the foregoing in the light most favorable to respondent reflects that appellant at the most has received the value of the stock, taken at its cost of $2,700 in the absence of any other evidence (see *Harris* v. *Harris, supra,* 210 Cal. App.2d 559, 566; but cf. *Forbes* v. *Forbes, supra,* 118 Cal. App.2d 324 where the trial court had refused to consider value as distinguished from cost), the value of the trust deed interest which could in no event produce a recovery of over $3,000, and the right to receive in monthly payments the sum of $7,000; or in the aggregate $12,700. As against this, respondent has the real property and improvements at a minimum of $17,500, the laundry equipment at $2,500, plus the truck and his insurance, all subject to the payment of the $7,000. He thereby has a net of $13,000, plus the value of the truck and the insurance. It is concluded that no implied findings can be made from the meager record which will sustain the judgment. In fact any findings implied from the evidence tend to dictate a reversal because the record affirmatively reflects the inequality to the prejudice of appellant. (*Diamond* v. *Diamond, supra,* 149 Cal.App.2d 788, 790; *Williams* v. *Williams, supra,* 146 Cal.App.2d 307, 308-309.)

Respondent, therefore, is in no position to avoid the consequences of the rules first stated. ■■■ As said in *Bailey* v. *Bailey, supra,* 60 Cal.App.2d 291, 296: "In the case at bar the trial court has failed to make any findings as to the nature and extent of the community property interest. This defect might be remedied by the appellate court, except for the fact, as already indicated, that the evidence is not sufficient upon which to make a finding as to the value of the community property interest of the parties. Without first having ascertained the value of the community property interest involved, it would be impossible, under the circumstances of this case, to make any just or equitable award as to division of the property or compensation in lieu thereof."

The judgment is reversed as to the portions thereof relating to the division of the community property of the parties and the case is remanded for a new trial on the issues relating thereto. In all other respects the judgment is affirmed.

Sullivan, P. J., and Molinari, J., concurred.