[Civ. No. 33525. Second Dist., Div. One. July 29, 1969.]

CLIFFORD MAGEE MAY, Plaintiff and Respondent, v. JEAN LICHTY MAY, Defendant and Appellant.

Young & Young and Walter H. Young for Defendant and Appellant.

Edwin M. Rosendahl for Plaintiff and Respondent.

FOURT, Acting P. J.—Clifford Magee May in August of 1966 filed a complaint for divorce on grounds of extreme cruelty. His wife, Jean Lichty May, responded with a cross-complaint for divorce which she later amended to request separate maintenance, and once again during trial amended on motion to request a divorce on the ground of extreme cruelty. The nine-day trial took place in August 1967, and several weeks later the court's proposed findings were presented; counsel for Mrs. May thereupon filed objections and requests for special findings which were duly considered and acted upon. On November 24, 1967, the court filed its ultimate findings of fact and conclusions of law determining that each of the parties was entitled to a divorce from the other on the grounds alleged and purporting to divide equally the community property. In accordance therewith, the trial court on December 6, 1967, signed and filed an interlocutory judgment of divorce. In order to accomplish an equitable division of the community property, which included numerous parcels of unimproved real property, the decree required each of the parties to perform certain acts in implementation of specific property transfers. The motions of Jean May for a new trial and to stay execution of the decree were denied on January 11, 1968. On February 9, 1968, she appealed from the interlocutory judgment. Because she thereafter failed and refused to perform certain terms of the decree, the court by order of April 11, 1968, granted respondent's motion pursuant to Code of Civil Procedure section 949 to require her to post a bond pending appeal in order to insure her faithful performance of the judgment in the event her appeal should be either dismissed or decided adversely. She has appealed from that order as well, and the appeals have been consolidated for our consideration.

In respect to the interlocutory judgment, appellant contends first that the evidence does not support the findings, and that the findings are inadequate to support the judgment with respect to the determination that her husband was entitled to a divorce on account of her acts of extreme cruelty, and on that basis she argues that neither the evidence nor the findings sustain an equal division of the community property. Secondly, she contends that, assuming that an equal division of the community property was proper, it was not accomplished by the decree, from which it cannot be determined with certainty the extent of the inequity because not only are the properties inadequately described therein, but no findings of the dollar value of the respective properties were made and

entered by the court. In respect to her appeal from the order
of April 11, 1968, appellant contends that since the execution
of a divorce judgment is automatically stayed by appeal, the
order requiring her to post a bond to stay execution pending
appeal is improper. Except insofar as it is herein determined
that appellant is entitled to specific findings relating to the
dollar value of each and every item of community property,
these contentions are without merit.

Appellant's primary contention is that the evidence
is insufficient and the findings are inadequate to sustain the
conclusion that she committed acts of cruelty which entitled
her husband to a divorce. The California Supreme
Court has succinctly stated the applicable rules as follows:

"(1) The infliction of grievous mental suffering as a
ground for divorce is a question of fact, to be deduced from
the circumstances of the case in light of the intelligence,
refinement, and delicacy of sentiment of the complaining
party. [Citations.]

"(2) The sufficiency of the corroborative testimony in
a divorce action lies within the sound discretion of the trial
court. [Citations.]

"(3) When a finding of fact is attacked on the
ground that there is no substantial evidence to sustain it, the
power of an appellate court *begins* and *ends* with the deter-
mination of whether there is any substantial evidence, contra-
dicted or uncontradicted, which will support the finding.
[Citation.]" (*Lipka* v. *Lipka,* 60 Cal.2d 472, 475 [35 Cal.
Rptr. 71, 386 P.2d 671].)

It is well established that the trial court has broad
discretion in determining the relevancy, admissibility, and
weight of the evidence, as well as its sufficiency to sustain a
finding of extreme cruelty in a divorce action, and the exer-
cise of that discretion will not be disturbed on appeal unless
the evidence is so slight as to disclose an abuse of discretion.
(*Smith* v. *Smith,* 215, Cal.App.2d 460, 462 [30 Cal.Rptr. 250];
*Correia* v. *Correia,* 215 Cal.App.2d 368, 373-374 [30 Cal.Rptr.
297].) Moreover, "On appeal, conflicts of evidence
must be resolved in favor of the judgment of the trial court."
(*Jensen* v. *Jensen,* 196 Cal.App.2d 643, 645 [16 Cal.Rptr.
677].)

Although respondent's complaint alleged the ground
of extreme cruelty in general terms and appellant entered
neither demurrer nor demand for further specificity (Code

Civ. Proc., § 426b) she interposed written objections to the proposed findings of fact and requested, inter alia, specific findings relating to the acts upon which the trial court based its finding that respondent had suffered from her extreme cruelty. Following a hearing upon these objections, the trial court amended its findings to set forth the specific acts[1] of cruelty relied upon. Appellant claims that the acts described are trivial and inadequate, and are insufficient as a matter of law to sustain the finding of extreme cruelty on her part. Under the rules of law hereinbefore enunciated, the appellate court would not be justified in so determining. In fact, it

---

[1] "'During the marriage of the parties, the Wife has been guilty of extreme cruelty to the Husband in that she has wrongfully inflicted upon him grievous mental suffering without cause or justification, and the Husband has also been guilty of extreme cruelty to the Wife in that he has wrongfully inflicted upon her grievous mental suffering without cause or justification. By reason thereof, each of the parties is entitled to a divorce from the other.

"Pursuant to a request for specific findings filed by the Wife, the Court herewith makes specific findings concerning acts of cruelty committed by the Wife. In connection herewith, the Court finds that among other acts, and during the marriage of the parties and prior to separation, the Wife committed the following acts of cruelty towards the Husband:

"A At various times and without justification, the Wife was callous, indifferent and impolite to a number of the Husband's business prospects and social acquaintances.

"B At various times and without justification, the Wife displayed to the Husband's friends and his business prospects her indifference towards and her dislike for her husband's musical accomplishments on the piano.

"C At various times and without justification, the Wife, in a variety of ways, communicated to the Husband that the children of the parties were more important to her than was her husband, and specifically on one occasion in Hawaii, the Wife insisted on the family continuing on vacation thereat, despite the fact that her husband had just been seriously injured in an airplane accident and was suffering from physical pain and emotional upset, and wished to return to Los Angeles. By reason of the Wife's conduct as aforesaid, the Husband returned to Los Angeles alone.

"D At various times and without justification, and while the Husband was ill and hospitalized, the Wife either discouraged the children of the parties from visiting their father or, in the alternative, did not make any wifely efforts to see to it that the children visited their father.

"E At various times and without justification, the Wife actively interfered with reasonable disciplinary efforts of her husband towards their children, and thereby effectively thwarted reasonable parental control by the Husband and thereby tended to cause disrespect of the children towards their father to be engendered.

"F The Court specifically finds that since April of the year 1961, that seeds of general discord existed between the Husband and the Wife, and that during the passage of time thereafter, the situation worsened; that the parties drifted and continued to drift further apart, both physically and psychologically, and that in connection therewith, a substantial portion of the cause of such discord was the responsibility and fault of the Wife.''

appears prima facie that respondent is entitled to a divorce where his wife has engaged in the cumulatively cruel conduct described. The trial court found that she was impolite to her husband's business and social acquaintances, that she expressed to her husband and his acquaintances her distaste for her husband's piano playing; that she told him that their children were more important to her than he; that she continued on a planned vacation with the children leaving her husband alone despite his then prevailing condition of physical pain and emotional upset occasioned by an accidental injury; that she prevented or discouraged the couple's children from visiting their father on a later occasion while he was ill and hospitalized; and that she interfered with respondent's interested discipline of his children. Appellant additionally urges that the findings are deficient because the court fails to identify the time, place and persons present when these acts occurred. Code of Civil Procedure section 632 requires the trial court to make findings on all material issues in the case. The court must make findings on all material issues in a divorce case as in other cases (Civ. Code, § 131) but it is, in any event, only required to find ultimate facts and not probative facts. ■ The findings are sufficient so long as they are definite, certain, clear and intelligible and fully cover all material issues tendered by the pleadings. (*Morrow* v. *Morrow*, 201 Cal.App.2d 235, 238 [20 Cal.Rptr. 338]; *LaMar* v. *LaMar*, 30 Cal.2d 898 [186 P.2d 678].) ■ The arguments which appellant sets forth to controvert the findings constitute, in substance, an attack directed to the weight of the evidence rather than to its legal sufficiency, and this is not a proper subject for consideration on appeal. (*Hicks* v. *Hicks*, 211 Cal.App.2d 144, 160 [27 Cal.Rptr. 307].)

Our review of the record discloses substantial evidence to sustain the special findings of acts of mental cruelty. Clifford and Jean May had been married for over 33 years and had four children at the time divorce preceedings were instituted. Their minor son, Michael, was 16 and attended private school in Arizona. Two of their daughters, Melany, age 20 years, and Marilyn, age 33 years, were married and did not reside at home. The third daughter, Hillary, age 22, resided with her parents.

Clifford May, a well known builder and developer of exclusive properties in the West Los Angeles area, had acquired together with his wife sometime early in the 1950's a tract of 150 acres in Sullivan Canyon, from which the parties from

time to time over the years sold residential lots. About 14 years before their divorce the Mays built upon 11½ acres in the Sullivan Canyon area an 8,000-square-foot home which they furnished and decorated as a combination residence and business-display home. The entire family had to bear the additional burdens attendant upon use of the home for display and sales purposes by Mr. May, who required that the house should be ready for display to affluent clients upon a half hour's notice at any time from 8:30 a.m. until late at night. This meant, among other things, that all of the paraphernalia evidencing daily human use and occupancy must be concealed; the numerous full-length glass windows must be kept clean and the leaves of the many large decorative plants must be wiped free from dust; the fringe on the rugs must be combed and kept straight and the towels must all be folded neatly. Mr. May regularly brought groups of people to the house for lunch, dinner, or cocktails and frequently entertained overnight guests. Mrs. May supervised the cleaning, the food preparation, and the child rearing; she also conducted tours of the display house for clients and guests.

Mr. May testified, however, that his wife in recent years frequently failed to appear when he had business acquaintances present for lunch or cocktails, although she might make a dramatically late entrance and embarrass him by her off-hand refusal of his invitation to participate in the social occasion. One time when Mr. May desired to have a married couple, potential clients, visit and spend the night at the display home, Mrs. May refused to allow them to remain. Moreover, she pouted throughout dinner and entertainment, and when the two men in the early morning hours started to play the dual pianos in the living room, Mrs. May promptly went to bed leaving the client's wife to nap alone on the sofa. Mr. May further testified that Mrs. May often expressed displeasure with his piano playing. In addition she declined to give parties for her husband's old friends and acquaintances at his request and, despite their personal friction, she refused to move out and to allow her husband to use freely and without interference the display home that he considered essential to his business.

Mrs. May was admittedly deeply involved with the lives and welfare of the children. Her husband testified that she interfered with his reasonable desire to discipline the children, that she ordered the children served their breakfast on trays in their rooms while they were in school contrary to her

husband's desires, and that she enrolled the children, against her husband's wishes, in U.C.L.A. Training School where they were not effectively taught the essentials of reading and mathematics. After the birth of their son Michael, the youngest, Mrs. May told the older girls that now their father loved his son the most. Later she interfered with the scheduled practice imposed by her husband on their son to insure his learning to play the piano.

On one occasion Mr. May, who had been drinking heavily and did not feel well, broke his nose in a fall on the bathroom floor in the early morning hours. Hospitalization and surgery were required because of an infection as the aftermath of the injury. His wife responded so cooly to his infirmity and hospitalization that her visits became a traumatic event and the doctor finally ordered Mrs. May to stay away from the hospital to allow her husband to recuperate peacefully. Mr. May suffered severe depression because his wife kept the children away also during that period and told one of the nurses that, in fact, she knew that her husband did not desire to see his daughters.

On another occasion the family was scheduled to spend a few vacation weeks in Hawaii. Mr. May, who flew his own small plane on trips in the United States, had planned to fly to Arizona and visit Michael in private school before joining the family in Honolulu. He suffered an accident and broke his arm while in Arizona, but he nonetheless promptly flew to Honolulu and went to his room at the hotel. Once there he suffered from physical pain and was miserable, so he suggested that his wife and the children leave their vacation to return with him to Los Angeles. The family was having a grand time and Mrs. May refused to leave the islands, so Mr. May was forced to return to California alone while his family completed the scheduled vacation.

Mr. May's testimony was corroborated in part by the testimony of Mr. John H. Green. Mr. Green testified that Mrs. May disliked Mr. May's piano playing and on frequent occasions when he was a guest at the May residence she simply left the room when her husband started to play. On the occasions when Mr. Green remained for the night, Mrs. May failed to join her husband and his guest at breakfast. In addition, on frequent occasions Mr. and Mrs. May drove to parties or social gatherings in separate automobiles and while Mr. May left early to return to their residence, his wife remained at the party and returned home very late. These events, Mr. Green

testified, both depressed and emotionally disturbed Mr. May.

Appellant insists that the findings are unsupported by the evidence because the husband's testimony delineating the several acts of cruelty was not in each instance corroborated. In divorce actions, however, the sufficiency of the corroborating testimony lies within the sound discretion of the trial court. (*Lipka* v. *Lipka, supra,* 60 Cal.2d 472, 475.) ▮ It is not essential, where multiple acts of mistreatment are related as testimonial evidence of a spouse's cruelty, that there be direct testimony by corroborating witnesses to each of the acts. (*Nunes* v. *Nunes,* 62 Cal.2d 33, 37 [41 Cal.Rptr. 5, 396 P.2d 37] ; *Keener* v. *Keener,* 18 Cal.2d 445, 449 [116 P.2d 1].) In fact, where it is clear that there is no collusion between the spouses, only slight additional proof is required. (*Ruggles* v. *Ruggles,* 43 Cal.2d 547, 548-549 [275 P.2d 42] ; *Linsk* v. *Linsk,* 70 Cal.2d 272, 281 [74 Cal.Rptr. 544, 449 P.2d 760].)

▮ The trial court did not err either in refusing to permit the minor child of the parties to testify or in discouraging the older children from acting as witnesses in the divorce proceeding. The trial court clearly regarded the testimony of the children as irrelevant or not essential to a determination of the issues relating to the cruelty of their parents to one another. The court was disinclined to receive such testimony, especially from the 16-year-old son, on the basis that it would be merely cumulative and lacking in probative value. A stipulation having been entered relating to Michael's custody, the trial court rejected his testimony with the opinion that "He can contribute nothing to this particular case." When daughter Melany testified the trial court was careful to limit her testimony to the issue of impeachment observing that "I would rather not exacerbate the feelings of the parents with this witness on the stand." The trial court is empowered in its discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time. . . ." (Evid. Code, § 352; *Moody* v. *Peirano,* 4 Cal.App. 411, 418 [88 P. 380].) Under these circumstances, the trial court is justified in considering the adverse emotional overtones and social consequences inherent in such testimony and balancing these against its probative value. Appellant fails to demonstrate that she was substantially prejudiced or that the trial court abused its discretion in rejecting the evidence thus offered.

Each party having demonstrated the right to a divorce on grounds of extreme cruelty, the court in awarding a divorce to each has no discretion but is required to divide the community property of the parties equally. (*De Burgh* v. *De Burgh*, 39 Cal.2d 858, 874 [250 P.2d 598].) Appellant, therefore, has no basis for contending that she was entitled to more than one half of the community property.

Appellant's second principal contention is that the judgment must be reversed insofar as it purports to divide the community property between the parties on the ground that where no findings of the dollar value of specific items of property were made and entered by the trial court, its conclusion that the community is by the interlocutory decree equally divided between the parties is unsupported by adequate findings of fact. About half of the time devoted to the consideration of testimonial evidence at the trial related to the determination of value of the substantial property, especially real property, acquired by the parties during this long marriage. Thereafter, on October 2, 1967, the trial court orally announced to counsel in chambers its proposed decision. Twenty-two pages of proposed findings of fact and conclusions of law were accordingly prepared by the husband's attorneys and submitted to the court and appellant. Appellant reviewed the proposed findings and on or about October 20, 1967, filed with the court a 20-page document entitled "Objections to Proposed Findings, Request for Special Findings, and Proposed Amendments." The parties were notified that the court had set the date of November 7, 1967, to hear and consider these objections to the proposed findings. The hearing, which was held in the chambers of the trial judge without a court reporter, consumed all of November 7 and the entire morning of November 8, 1967. Counsel presently disagree with regard to the precise events which occurred at that time. Both, however, concede that when their attention turned to the determinations of dollar values, which were not included in the proposed findings, Mr. Rosendahl stated that Mr. Bellanca, a certified public accountant, who was formerly tax consultant to both parties and who testified on behalf of Mr. May during the trial, had advised him that adverse tax consequences might accrue to the parties if specific dollar values were attributed to the properties. It is respondent's contention, which is unsupported by the formal record on appeal, that the parties then accepted the equality of the property division and in chambers orally stipulated that, for

tax reasons, it was desirable that dollar values should not be assigned to the various properties by the settled findings.[2] Appellant vigorously denies the existence of such a stipulation. No minute order was prepared or entered as a memorial of the proceedings, and this court is not at liberty to base its decision on matters outside the record.

Appellant's counsel asserts that he assumed at the hearing a position consistent with this appeal, i.e., that his client was entitled to specific findings relating to property values. On November 24, 1967, the court entered its minute order overruling all objections except as to modifications therein specified, and on the same day the modified findings were filed. These findings set forth appellant's acts of cruelty as requested. Respondent's counsel was directed to prepare the judgment and to include therein, for the first time, legal descriptions relating to each parcel of real property. On November 15, 1967, appellant, without repeating her requests for special findings, filed further written objections to the findings on the ground that no findings had been made with reference to the correctness of the legal descriptions of the real properties and it would be improper to incorporate these for the first time in the judgment without a supporting determination in the findings. No further action was taken in relation to this request. The court made and entered its interlocutory judgment of divorce on December 6, 1967. Appellant's motion for new trial was made and determined adversely to appellant on December 15, 1967, and her notice of appeal was filed on February 9, 1968.

---

[2]Respondent asserts that following their discussion on the subject the attorneys, at the hearing in chambers and without a court reporter present, entered an oral stipulation and express agreement to the effect that the property division was in essence equal and the trial court's findings need not include specific values for the various properties which would be assigned, respectively, to the husband and to the wife under the forthcoming interlocutory decree. Without making a formal motion to augment the record on appeal, respondent has included in an appendix to his brief the verbatim contents of a declaration dated February 26, 1969, and signed by the trial judge, at respondent's request, a year after the notice of appeal was filed, and five months after appellant's opening brief was filed.

This declaration, the original of which was lodged with this court, purports to confirm the existence of the alleged oral agreement. Appellant, who filed written objections and requests for special findings as to the dollar values of the properties, refutes the existence of the asserted stipulation, which in any event fails to meet the formal requirements for waiver of findings. (Code Civ. Proc., § 632.) As we have pointed out, no motion to augment the record was made and it is, moreover, doubtful whether such a motion could properly have been granted. Under the circumstances, it would be improper for this court to attempt to resolve this issue in reliance upon the trial court's declaration which does not constitute part of the record in this case.

Under California law when each party is granted a divorce from the other on grounds of extreme cruelty, the trial court is not vested with discretion in the division of the community property, but is required to divide it equally between the parties. (*De Burgh* v. *De Burgh, supra,* 39 Cal.2d 858, 874.) ██ ''Where the court is required to make an equal division of the community property it should not attempt such a distribution without first ascertaining the value of the respective items to be divided. [Citations.]'' (*Hong* v. *Hong,* 237 Cal.App.2d 239, 241 [46 Cal.Rptr. 710].) ██ The trial court in a divorce action is required to make and enter findings of fact and conclusions of law (Civ. Code, § 131) and the parties concede that under the circumstances of this case, especially where a request for special findings has been made, the court is required to make and enter findings as to the value of the specific items of community property. There is in the present case nothing in the express findings to which reference can be made to supply findings of value, even as to the total value of the community assets. Therefore, appellant's contention is well taken in that it cannot be ascertained from the findings that the values are supported by the evidence or that the trial court's division is mathematically equal.

Respondent contends that findings of specific value were orally waived by appellant. Code of Civil Procedure section 632, at the time of the proceedings here in question, however, provided that essential findings of fact could be waived only by failure of a party to appear, or thereafter, ''by consent in writing filed with the clerk or judge, or by oral consent in open court, entered in the minutes.'' ██ Although findings of fact may be waived in a divorce action (*Bilger* v. *Bilger,* 54 Cal.App.2d 739, 743 [129 P.2d 752]) the methods of waiver set forth in the controlling statute are exclusive (*San Jose etc. Title Ins. Co.* v. *Elliott,* 108 Cal.App.2d 793, 802 [240 P.2d 41]), and the waiver of findings on any material issue cannot be presumed but must affirmatively appear. (*Ball* v. *Kehl,* 95 Cal. 606, 614 [30 P. 780].) ██ There is nothing in the record from which we may infer that appellant waived her request for findings of value.

''The so-called 'stipulation' was not made in open court and entered in the minutes of the court, and it was not in writing, and, therefore, under the requirements of section 283. subdivision 1, of the Code of Civil Procedure, such talk would

have been of no effect as a stipulation." (*Roscoe Moss Co.* v. *Roggero,* 246 Cal.App.2d 781, 785-786 [54 Cal.Rptr. 911].)

The authority of counsel to deal with the rights of clients is reasonably limited by the requirement that " '[W]henever the attorney shall enter into an agreement for the purpose of binding his client, there shall be *such a record thereof as will preclude any question concerning its character or effect, and that the extent of the agreement may be ascertained by the record.*' " (*Harrold* v. *Harrold,* 100 Cal.App. 2d 601, 605 [224 P.2d 66].) ". . . [W]here the making of an oral stipulation, . . . , which has neither been reduced to writing and filed with the clerk nor entered in the minutes, is denied by one of the parties, the courts will not inquire into the matter but will apply the rule of section 283 of the Code of Civil Procedure." (*Fresno City High School Dist.* v. *Dillon,* 34 Cal.App.2d 636, 644 [94 P.2d 86].)

Respondent further contends that appellant in her testimony agreed to accept the values attributed to the properties by her husband on the financial statements which he introduced at the trial. By footnote to its findings the trial court acknowledges that it utilized the general property descriptions according to "Plaintiff's Exhibits 1 and 3." The exhibits referred to are financial statements prepared by an accountant without audit on information and value estimates supplied to him by the husband, and the documents are neither attached nor incorporated by reference in the findings. The record does not warrant the inference that the values attributed to the specific items of community property by the husband were accepted by the court on the basis that their accuracy was conceded by the wife or was otherwise established. Appellant, who is competent to render her testimonial opinion as an owner without expert qualification (Witkin, Cal. Evidence (2d ed. 1966), 361-362, 381-382; *Willard* v. *Valley Gas & Fuel Co.,* 171 Cal. 9, 14 [151 P. 286]; *People* v. *Henderson,* 238 Cal.App.2d 566 [48 Cal.Rptr. 114]; *People* v. *La Macchia,* 41 Cal.2d 738, 746 [264 P.2d 15]) was examined as a witness concerning the valuation of specific parcels of realty. Although she agreed with certain valuations from her husband's financial statement, the values of several substantial properties were at the trial and are in her brief on appeal vigorously disputed.

Substantial evidence relating to the fair market values of all of the properties, both real and personal, was received by the trial court and in some instances conflicts are evident, particularly with respect to the fair market values of certain

unimproved parcels of real property. The findings, nonetheless, are exceedingly explicit and purport to balance the property division with promissory notes and otherwise to adjust the values to arrive at an equitable disposition of the property between the parties. It is apparent that the trial court attempted to achieve a meticulous and equal property division along lines suggested by the testimony of the parties at the trial, and the division is obviously based upon special considerations and inferences or concessions with respect to value. In view of the fact, however, that the findings have been consistently disputed as to the values and equality of the division, appellant is entitled to findings from which an appellate court can ascertain whether the judgment embodies an equal division. ▪▪▪ If the evidence as to value were insufficient, the case should be remanded for a new trial upon the question of the value of the community property involved. (*Bailey* v. *Bailey,* 60 Cal.App.2d 291, 296-297 [140 P.2d 693].) Where, as in the present case, the appellate court finds that the evidence as to values which was introduced at the trial is sufficient, the defect in the findings may be remedied upon a review of the evidence and the determination of value by the appellate court (*Hong* v. *Hong, supra,* 237 Cal.App.2d 239), or the case may be remanded to require the trial court to make adequate findings. (*Perry* v. *Jacobsen,* 184 Cal.App. 2d 43, 50 [7 Cal.Rptr. 177].) Under the circumstances, it would be undesirable for this court to review the evidence and determine property values which might be inconsistent with those utilized by the trial court in reaching its careful decision. There is no need to consider further appellant's assertions that specific properties were incorrectly valued with resulting inequity and prejudice to her interests since these contentions are necessarily based upon speculation where no values have been inserted in the findings. Ample evidence of value was received at the trial, hence no purpose would be served by ordering a new trial.

"The judgment in this case must be reversed because of the inadequacy of the findings of fact. The record does not indicate that any purpose would be served in ordering a new trial. Under such circumstances, it is proper to remand the case with directions to the trial court to make adequate findings, based on the evidence now before it; draw proper conclusions of law therefrom; and enter judgment accordingly. [Citations.]" (*Perry* v. *Jacobsen, supra,* 184 Cal.App.2d 43, 50.)

Appellant further contends that the findings are deficient because the trial court failed to determine that the legal descriptions of the various lots and parcels of realty, which were submitted by Mr. May and were for the first time incorporated in the interlocutory judgment, were in fact correct and described accurately the properties awarded. It is conceded that no legal descriptions relating to these parcels of real property, several of which apparently are not included within any formally recorded subdivision tract, were in existence at the time of trial. All properties were, by implied consent, referred to by common name designation such as "Queens Ferry," "Display House," and so on. The difficulty anticipated by appellant is that in the event of the future transfer of these properties, policies of title insurance will in all likelihood be required according to the customary California practice. This purely practical consideration should be of equal concern to both parties. The interlocutory judgment, for example, awards to appellant "Item No. 7-1-½ acre lot (Givens) [EXHIBIT E hereof, consisting of Parcels 1, 2 and 3, pp. 1 and 2] and easement strip [EXHIBIT F hereof]." Exhibit E is a single page (possibly the second page was inadvertently omitted) description by metes and bounds of certain parcels 1 and 2 prepared by Spears Engineering Co., undated and untitled; Exhibit F purports to be a metes and bounds legal description relating to an easement apparently one foot in width which was prepared by T. S. Taft & Associate, a civil engineering and land surveying concern, without date or title. Even assuming that the interlocutory decree should become final without modification, there is nowhere in the record any assurance that Exhibits E and F, which are attached to and incorporated by reference in the decree, in fact describe the "Givens lot" referred to by the parties and awarded to appellant. Insofar as this may be the case with respect to the various individual parcels of realty which the judgment purports to award to both or either of the parties, neither appellant nor respondent would be in a position to provide title protection. Neither party has directed to this court's attention the existence of any stipulation which would satisfactorily resolve this matter. Appellant may desire to select and employ a firm of engineers and surveyors of her own choosing to verify the descriptions supplied by her husband before acknowledging the correctness and accuracy of the legal descriptions. The trial court, however, was not in a position to try title and, absent an agreement by the parties, it could do no more. If the parties are unable to agree it may

be necessary to bring supplementary proceedings to quiet title or to partition the properties in order to clarify the title.

 Appellant's further appeal from the court's order of April 11, 1968, requiring her to post an undertaking, is based upon her contention that such an order is improper because her pending appeal automatically stays execution of the judgment. The order purports to secure the faithful performance by Mrs. May of paragraphs XI and XIV of the interlocutory judgment which required her (1) to join with Mr. May as an officer of their wholly owned corporation, Ranch House Sales, to execute deeds of certain properties held by the corporation in favor of the respective parties, (2) to sell and to divide the proceeds from the sales of an automobile and certain shares of common stock, and (3) to apply certain cash sums to the payment of specific community obligations. Respondent's motion for an undertaking was made pursuant to the provisions of Code of Civil Procedure section 949 (since repealed and, in substance, presently embodied and contained in Code Civ. Proc., § 917.9). Although that section provided that the perfecting of an appeal stayed proceedings in the trial court, it also vested in that court discretionary authority to require an undertaking conditioned for the performance of the judgment appealed from in the event that the appeal were dismissed or the judgment affirmed on appeal. (*Williams* v. *Wells Fargo Bank,* 17 Cal.2d 104, 107 [109 P.2d 649].)

 "The use of the words, 'conditioned for the performance of the judgment', indicates the intent that a bond may be ordered in such of those cases where the appellant was adjudged to have money or other property in his possession belonging to the respondent, or was required to perform some act for the benefit of the respondent or in pursuance of the directions of the judgment or order appealed from. . . ." (*Jensen* v. *Hugh Evans & Co.,* 13 Cal.2d 401, 406 [90 P.2d 72]; *Balestrieri* v. *Sullivan,* 138 Cal.App.2d 559, 563 [292 P.2d 310].) Appellant acknowledges the trial court's discretionary authority to require the posting of the bond, but contends that the provision of the order which declares that if appellant fails to file the undertaking the respondent is entitled to submit to the court for its consideration and disposition an appropriately framed application for a writ of execution to require her performance constitutes an abuse of discretion. Patently the order would be meaningless if the person required to post the bond could with impunity refuse to comply therewith, and those provisions which articu-

late the potential consequences of continued lack of compliance with the court's order are merely surplusage and do not constitute an abuse of discretion.

The court's order of April 11, 1968, is affirmed. The interlocutory judgment is affirmed except insofar as the trial court is required to set forth express findings as to the value of the specific properties constituting the listed community assets of the parties in support of its determination that the community property should be and is equally divided by its interlocutory judgment of divorce.

Lillie, J., and Thompson, J., concurred.

A petition for a rehearing was denied August 22, 1969.